SLAUGHTER, Administrator of CASTLEMAN, deceased, and Others, *v.* HARRIS and Another, Administrators of HARRIS, deceased.

A party asking a decree for the specific performance of a contract, must show that he is not in default, and has taken all proper steps towards performance.

*Friday,*
*December* 8.

ERROR to the *Vermillion* Circuit Court.

SMITH, J.—A bill in chancery, filed in this case, alleges, that, on the 6th of *November*, 1822, *Harris* and *Castleman* made an agreement in writing, under seal. In this agreement it was stipulated, that *Harris* was the proprietor of a fraction of land containing about 454 acres upon which the town of *Clinton* was situated; that he had paid one-fourth of the purchase-money to the government, and for the remainder had taken the stay pursuant to an act of congress on that subject; that *Harris* thereby sold to *Castleman* one equal half of his interest in said tract of land, and that the latter should have one-half of all the profits arising from the sales of lots and lands in said tract, and that the expenses should also be equally divided. In consideration of this sale, *Castleman* was to pay *Harris* 1,200 dollars, as follows: the amount remaining due the government, estimated at 1,000 dollars, was to be paid by *Castleman* at the land office at *Vincennes* on or before the 31st of *March*, 1825. If the amount due at the land office did not amount to that sum, the balance was to be paid *Harris*, or to his order. The

residue of the 1,200 dollars, say 200 dollars, was to be paid to *Harris* out of the sales of lots in said town, *Harris* having the right to reserve that sum out of the share of *Castleman* arising at the first public sale. *Harris* bound himself and heirs to assign to *Castleman* one-half the certificate for said land, or make such other conveyance as would secure to *Castleman* the legal title thereto as soon as payment should thus be made; and for the performance of said contract the parties reciprocally bound themselves to each other in the penal sum of 2,400 dollars.

The bill then alleges, that, in pursuance of said agreement, *Harris* received sundry notes for collection for which he gave the following receipt:

"Received, on the 22d of *July*, 1824, sundry notes for collection, being the proceeds of the sale of lots in the town of *Clinton*, together with the proceeds of the ferry, amounting in all to 466 dollars and 25 cents, which were given jointly to myself and *Jacob Castleman*, in consequence of an article of agreement between said *Castleman* and myself bearing date *November* 6th, 1822.

" *Wm. Harris.*"

Also, that *Castleman* gave *Harris* certificates for seven quarter sections of land, which were received by *Harris* in part payment of the 1,200 dollars mentioned in said contract, and for which *Harris* gave the following receipt:

"Received, 26th *October*, 1824, of *Jacob Castleman*, certificates for seven quarters of land amounting, in the whole, to 560 dollars, to be applied towards the payment of the fraction of land upon which the town of *Clinton*, is situated, pursuant to an article of agreement between myself and said *Castleman;* also 5 dollars to defray expenses, &c. One of the above certificates for one quarter may be returned should it not be used as above.

" *Wm. Harris.*"

Also, that *Castleman* paid *Harris* the further sum of 160 dollars, in land certificates, as evidenced by the following receipt:

"Received, *December* 22d, 1824, of *Jacob Castleman*, two

land certificates amounting to 160 dollars, to be applied towards the payment, in the land office, of the *Clinton* fraction, pursuant to an article of agreement existing between said *Castleman* and myself. Given under my hand the above date; also 6 dollars in cash to pay charges.

"*Wm. Harris*."

The bill then further alleges that *Castleman* paid divers other sums for taxes on said land, expenses incurred in the sales thereof, and expenses in taking care of the same, in all 500 dollars; that *Harris* had, from time to time, after said contract, sold lots and received therefor, and from the proceeds of a ferry established upon the joint property, the sum of 5,487 dollars.

The complainants therefore charge that *Harris* had thus received payment of the 1,200 dollars specified in the contract, and also a large sum which should have been paid over to *Castleman;* but they aver that he had obtained a patent from the government for said land in his own name, and had refused to convey the one half to *Castleman* or his heirs, and to account and pay over the sums as aforesaid.

It is alleged that *Castleman* died in *May*, 1838, and *Harris*, in ——, 183–; that *Houghton* is administrator of *Harris*, and that *Bedford Harris*, an infant, is his sole heir. Prayer, for an account and general relief, and that the unsold lots may be divided between the heir of *Harris* and the complainants.

A guardian *ad litem* was appointed for *Bedford Harris*, who filed the usual answer.

*Houghton*, the administrator of *Wm. Harris* also answered. He admits the contract set out in the bill. He says that *Harris* had paid one-fourth of the purchase-money, and was entitled, by the laws then in force to a discount of thirty-seven and and one-half *per cent*. upon the amount then due upon payment in money, or to make payment without discount by the application of former payments for other lands, which should be relinquished to the government by the surrender of the certificates of purchase. That, on the 25th of *December*, 1824, *Harris*

paid, at the land office at *Vincennes*, the balance due for
said tract of land and received a patent in his own name,
which is made an exhibit.   That the amount of payment
then made by *Harris* was 885 dollars and 15 cents, of
which the sum of 882 dollars and 10 cents was paid in
certificates of former purchases relinquished.   That, by
the journals of the land office at *Vincennes*, an extract
from which is made an exhibit, it appears that *Harris*, in
making the payment last referred to, relinquished five
certificates of purchase, covering six quarters of land,
which had been entered by *Castleman*, and which were
used in said payment to the amount of 480 dollars, equal
to a cash payment, at $37\frac{1}{2}$ *per cent.* discount, of 300 dol-
lars.   The respondent says he has no knowledge of any
other payment made by *Castleman* on the contract.   He
says that about the time *Harris* made the last payment
for the land, *Castleman* left the state of *Indiana* and never
returned.   The respondent found amongst the papers of
*Harris* a letter from *Castleman*, dated *Woodford* Co., *Ky.*,
the 14th of *September*, 1832, in which *Castleman* says when
he left *Indiana*, five years before, he expected to return in
six weeks.   He then, after mentioning the causes which
had prevented his return, says, if he had calculated on
being so long absent he would have made arrangements
to have had some money paid to *Harris*, and that if *Harris*
wished to receive any money from him before his return,
the time of which he says must be considered indefinite,
he, upon the request or order of *Harris*, would remit
through an agent, &c.   Enveloped in this letter the re-
spondent says he also found a paper in the hand-writing
of *Harris* purporting to be a copy of his answer thereto,
in which the latter says to *Castleman* that, in consequence
of the non-performance of the agreement on his part, he
had not considered him a partner in the *Clinton* concern
for a number of years, and consequently would receive
nothing further from him either directly or indirectly.
The respondent says he has no knowledge what sums of
money were paid for taxes or expenses, and that he is
unable to render any account of the money received by

*Harris* in his lifetime for sales of lots, &c. He says that notes, given *Harris* for the purchase-money of lots, amounting to 1,107 dollars, came to his hands, of which he had collected 520 dollars, and that there are other sums collected in the hands of a justice of the peace. He also admits the receipt of 130 dollars for ferry rents. He denies that *Castleman* ever complied with the contract on his part, and says that when the latter left the state of *Indiana* he entirely abandoned it. He supposes and believes that if any payments or advances were made by *Castleman* in land certificates or otherwise, the same have been fully settled for between the parties, and insists on the statutes of limitations in relation thereto.

Three witnesses, whose depositions were read, state that they understood from *Castleman*, in conversations shortly before he left the state, that he was no longer a partner with *Harris*, but had abandoned his contract. The other depositions on file relate only to the price of lots sold by *Harris*.

The cause was submitted on the bill, answers, exhibits, and depositions, and the bill was dismissed.

We can perceive no ground upon which the decree of the Circuit Court dismissing the bill should be reversed. The facts stated in the bill do not show, nor is there any proof, that *Castleman* ever performed, or offered to perform, his part of the contract. Admitting that all the land certificates mentioned in the two receipts of *Harris* were received by the latter from *Castleman* to be applied towards the payment due for the tract of land at the land office, and that they were so applied, and that no discount should be deducted, there was still a deficiency of 280 dollars required to make up the sum of 1,000 dollars which *Castleman* had undertaken to pay *Harris*. It is contended by the complainants that *Harris* received sufficient sums from sales of the joint property to make up this deficiency, but *Castleman* was not entitled to a share of the proceeds of such sales without payment of the 1,000 dollars specified in the contract. We think it plain, therefore, that his representatives have not shown

themselves entitled to a decree for a specific perform- Nov. Term,
ance, or any other relief prayed for by the bill.                 1848.

Per Curiam.—The decree is affirmed with costs, &c.

A. Kinney and S. B. Gookins, for the plaintiffs.

E. S. Terry and W. P. Bryant, for the defendants.