## EWING *v.* CROUSE.

Courts of equity do not generally view time as of the essence of a contract; but if it appears from the terms of the contract or the conduct of the parties, that the design of the parties was to render it essential, it will be so regarded.

APPEAL from the *Clinton* Circuit Court.

May Term, 1855.

EWING
v.
CROUSE.

Tuesday,
June 5.

DAVISON, J.—This was a suit in equity for the specific performance of a contract to convey real estate. *Ewing*, on the 24th of *April*, 1852, executed to *Crouse* the following instrument:

"Received this day of *Daniel B. Crouse* 100 dollars, as part payment of certain lands," (describing them,) "which I have at this date sold to him for 4,000 dollars, to be paid as follows: 900 dollars by the first day of *October* next; 1,000 dollars on the first of *January*, 1853; and the remainder in two equal annual payments. On the receipt of the first payment and the execution of a mortgage on the above-described property, I bind myself," &c., "to execute and deliver to *Crouse* a deed in fee for said lands. Should *Crouse* fail to make the first payment promptly, the herein receipted 100 dollars shall be considered a forfeiture on the part of *Crouse*, and all obligation on my part be null and void. *Thomas Ewing*."

There is in the record an agreed statement of facts, which is as follows: At the time of the above contract, *Crouse* held from *Ewing* a few acres of said lands, under an unexpired lease, which, by their mutual assent, was then cancelled. The parties met on the 25th of *September*, 1852. On that day *Ewing* and wife executed a deed in fee simple for the premises to *Crouse*, who then made his notes to *Ewing* for 3,000 dollars; also a mortgage on the same lands to secure their payment; all of which were deposited with one *John H. Smith*, who, by agreement, was constituted the agent of both parties. *Smith* was to deliver over the deed, notes and mortgage to the parties respectively entitled to them, on the payment by *Crouse* of the said 900 dollars on the 1st of *October*, 1852. At that time, viz., the 25th of *September*, *Ewing* told *Crouse* that his personal property was advertised for sale on the 2d of *October*, and he expected to start for *Wisconsin* on the fourth of that month; that he could not move unless he got his money; and if he, *Ewing*, did not get it, he would move into the house on the premises. *Crouse*, in reply, told him that he should not be disappointed.

On the second day after the deed, &c., were deposited with *Smith*, *Crouse* started for *Ohio* on business. At that time he held two notes, one for 600 dollars and another for 300 dollars, both due and on reliable men, each of whom promised the money by the 1st of *October*. Before leaving he directed his agents not to fail in getting the money for *Ewing;* if not on the notes, by some other means. *Ewing*, on the said 1st of *October*, demanded the 900 dollars of *Crouse's* agents, when he was told by them that it could not be raised; that there was nothing but promises for it, and they could not be relied on; that he was then safe, and they would advise him to keep himself safe. *Smith* then delivered the deed deposited with him to *Ewing*, who declared the contract no longer obligatory, and that he would take possession of the premises. He stopped the sale of his personal property and on the next day took possession. After this, on the fifth of the same month, one of *Crouse's* agents tendered the 900 dollars in bank paper, and also the notes and mortgage; but *Ewing* refused them, saying it was too late, that he was no longer bound, and that the bank bills were no money at all—nothing but rags. Afterwards, and before the institution of this suit, *Crouse* tendered 900 dollars in specie, and it being refused by *Ewing*, deposited it in the clerk's office of said Court.

It was proved that *Crouse* did work, such as grubbing and cutting down underbrush on the premises, which cost him 50 dollars, but which was of no value to *Ewing*. The lands, at the time of the contract, were in possession of a tenant of *Ewing*, whose term expired on the said 1st of *October*.

The bill prayed that a specific performance of the contract be enforced against *Ewing;* and the Court on a final hearing rendered a decree in accordance with the prayer.

The proofs clearly show that the vendee failed to pay or tender the 900 dollars on the day stipulated; but he contends that the language of the contract relative to the forfeiture, viz., "should *Crouse* fail to make the first payment *promptly*," &c., does not confine it absolutely to the day;

that in ordinary parlance, to pay "*promptly*" is to pay on
the day the money is due or shortly after.

This position, it seems to us, is not strictly correct.
The contract stipulates that the money shall be paid by
the first day of *October*. And we perceive nothing in the
force of the term *promptly* sufficient to extend the day of
payment beyond that period. From the whole contract,
it is evident that the parties intended to limit the time of
payment of the 900 dollars to the day specifically named;
and the word "*promptly*" must be so construed as to be
consistent with their intention.

The main point of inquiry is, whether the vendee is
entitled to a specific performance? Having failed to per-
form at the time agreed on, he could not have sustained a
remedy at law. But Courts of Equity do not generally
view time as being of the essence of the contract, unless
it appear from its terms or the conduct of the parties that
the design of the contractors was to render it essential.
7 Blackf. 227.—2 Story's Eq. Jur., s. 776.—1 Sugden on
Vendors 426. "In the ordinary case of the purchase of
an estate, the general object alone is the sale for a given
sum, and the stipulation as to the day of payment in truth
means that the purchase shall be completed within a rea-
sonable time. But where it necessarily follows from the
nature and circumstances of the contract, that the parties
intended to stipulate for a particular thing to be done at a
particular time, such a stipulation should, even in a Court
of Equity, be carried literally into effect."

There is, indeed, something peculiar in the language of
the present contract. It provides for a special forfeiture
in case the money should not be paid *promptly*, and then
declares that in the event of such failure to pay, "all obli-
gation" on the vendor's part shall be "null and void."
These provisions seem to show that the parties, at the
time of the sale, contemplated a literal performance within
the period named. But suppose this view to be incorrect,
we think their subsequent conduct affords sufficient proof
that both of them regarded and "expressly treated" the
time agreed on for the payment of the 900 dollars as an

May Term,
1855.

essential element in the contract. This conclusion is not doubtful when the various transactions which occurred between the parties on the 25th of *September* are considered. *Crouse* was then, in effect, reminded that "the time" was material, and his reply indicates that he so understood it. And moreover when *Ewing* was advised by *Crouse's* agents that the money could not be raised, it appears to us that he had a perfect right to abandon the contract. Whether the vendee can or not recover the money advanced when the contract was executed, or for improvements made on the lands, are questions that do not arise in the record, and upon which no opinion is given.

What we decide is, that the complainant has not made such a case as entitles him to a specific performance. *Slaughter* v. *Harris*, 1 Ind. 238.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*H. Allen* and *J. F. Suit*, for the appellant.

*S. A. Huff, R. C. Gregory, R. Jones* and *J. W. Blake*, for the appellee.