## BROWN *v.* BUZAN.

COMPUTATION OF TIME.—Where an act is to be done within a given number of days "from the time of the contract," the day upon which the contract was made must be counted as a whole day, in making the computation.

COURT OF COMMON PLEAS.—JUDGE PRO TEMPORE.—The record of an appeal from a court of common pleas showed that the judge of the court, being unable to attend at the term at which the judgment was rendered, appointed J. S., "a suitable person, and a member of the bar of the State of Indiana, and an attorney of said court," to hold the court for him.

*Held*, that the words used to describe the person appointed to hold the court, sufficiently show a compliance with the statute, which requires such appointee to be "a regular practicing attorney of the state."

UNCONSTITUTIONALITY OF LAWS.—The court should not strike down an act of the legislature for unconstitutionality, unless it be *clearly* in conflict with the constitution. The acts of the legislature are entitled to respect, and great caution should be exercised in setting them aside.

JUDGE PRO TEMPORE OF COMMON PLEAS COURT.—The act authorizing the appointment of a judge *pro tempore*, to hold the court of common pleas, in the absence of the regular judge, is constitutional.

APPEAL from the *Rush* Common Pleas.

FRAZER, J.—This was an action to recover damages for the breach of a contract, made on the 12th of *November*, 1863, for the sale and delivery of certain cattle. The second paragraph of the answer avers that "it was especially agreed and contracted, and was a part of the consideration, and of the essence of said sale, that the plaintiff should come and accept said cattle within seven or eight days from the time of said contract. That defendant was, at all times, up to and including the 19th day of *November*, 1863, ready to deliver said cattle, but that

the appellant failed to demand said cattle until the 20th of *November*, 1863, when the appellant demanded the cattle, and the appellee refused to deliver them, &c."

To this a demurrer was overruled, and upon this ruling error is assigned.

The question presented is, whether the demand was made in time. This depends upon whether the day on which the contract was made is to be computed as a whole day, or not. Eight days were given "from the *time of the contract*." In such computations, the rule of the law is not to regard fractions of a day, in pursuance of which, the day upon which an act is done is either excluded entirely, or counted as a whole day. The authorities are not harmonious upon this question, and as it is important that the rule in this state should be at rest, so that parties to contracts may know what to depend upon, we follow, without inquiry, the latest ruling of this court upon the subject. It was in *Tucker* v. *White*, 19 Ind. 253, where it was held, that in computing time "from the time of signing judgment," which was done on the 20th of *September*, that day must be counted; and the judgment was reversed because the court below had excluded that day in making the computation. We are perfectly aware that this case cannot be reconciled with some earlier ones of this court, but the court below, in the present case, did right in following the latest decision, and we shall not disturb its action.

The record before us shows that the judge, being unable to attend at the term of the court at which the judgment was rendered, appointed *John S. Scobey*, "a suitable person, and a member of the bar of said state (*Indiana*), and an attorney at said court," to hold the court for him. It is objected that *Mr. Scobey* is not shown to have possessed the qualifications required by statute.

The statute provides that the appointee shall be "a regular practicing attorney of the state," and the inquiry is, whether *Mr. Scobey* is shown by the record to have been

such. In deciding a question of this kind, involving, probably, many other cases disposed of at that term, and where its decision might work vast injury and loss to numerous private parties, it would be monstrous to be controlled by mere verbal criticisms, or nice differences which may be found to exist in the meaning of words. The substance only must be looked to, and if, in that respect, the qualifications of the appointee are shown to be what the statute requires, then the objection must fail, though the fittest form of words may not have been used to express it. By the words, "a member of the bar of said state, and an attorney at said court," we find no difficulty in understanding the gentleman to be a practicing lawyer. The expression could not be used, with any propriety, to designate a mere voter, who had simply proven a good moral character, and taken an attorney's oath. Such an one "may practice law," in the language of the constitution, but he could not be called an "attorney," or "a member of the bar," without an abuse of language. By these terms, we generally understand a man whose vocation is the legal profession, i.e., a practicing attorney. And when one has retired from the profession, to engage in another pursuit, or to enjoy the evening of life in quiet, we do not, generally, speak of him as an attorney, but as a merchant, or farmer, or the like, or as *having been* an attorney.

But the constitutionality of the act of the legislature, authorizing common pleas judges to appoint attorneys to act for them, is questioned, and the point is maintained in argument with much ingenuity.

The constitution is paramount to any statute, and whenever the two are in conflict the latter must be held void. But where it is not clear that such conflict exists, the court must not undertake to annul the statute. This rule is well settled, and it is founded in unquestionable wisdom. The apprehension sometimes, though rarely, expressed, that this rule is vicious, and constantly tends toward the destruction of popular liberty, by gradually destroying the constitu-

tional limitations of legislative power, results from a failure to comprehend the character of our forms of government, and the fundamental basis upon which they rest. The legislature is peculiarly under the control of the popular will. It is liable to be changed, at short intervals, by elections. Its errors can, therefore, be quickly cured. The courts are more remote from the reach of the people. If we, by following our doubts, in the absence of clear convictions, shall abridge the just authority of the legislature, there is no remedy for six years. Thus, to whatever extent this court might err, in denying the rightful authority of the law-making department, we would chain that authority, for a long period, at our feet. It is better and safer, therefore, that the judiciary, if err it must, should not err in that direction. If either department of the government may slightly overstep the limits of its constitutional powers, it should be that one whose official life shall soonest end. It has the least motive to usurp power not given, and the people can sooner relieve themselves of its mistakes. Herein is a sufficient reason that the courts should never strike down a statute, unless its conflict with the constitution is clear. Then, too, the judiciary ought to accord to the legislature as much purity of purpose as it would claim for itself; as honest a desire to obey the constitution, and, also, a high capacity to judge of its meaning. Hence, its action is entitled to a respect which should beget caution in attempting to set it aside. This, with that corresponding caution of the legislature, in the exercise of doubtful powers, which the oath of office naturally excites in conscientious men, would render the judicial sentence of nullity upon legislative action as rare a thing as it ought to be, and secure that harmonious co-operation of the two departments, and that independence of both, which are essential to good government.

With these preliminary observations, deemed called for at this time, as an expression of our purpose to adhere to ancient landmarks, let us examine the question in hand.

The seventh article of the constitution of the state contains all that is relied on in support of the objection now made. It provides that the judicial power shall be vested in a supreme court, circuit courts, and such inferior courts as the legislature may establish; that the judges of the supreme and circuit courts shall be elected by the people, for six years, but that provision may be made by law, for holding the circuit court, when the judge thereof shall be temporarily unable to attend.

It is argued, that inasmuch as the constitution expressly gives authority to the legislature to provide by law for holding the circuit courts, when their judges are unable to be present, and is silent as to the inferior courts, the maxim, "*expressio unius est exclusio alterius,*" applies. We think not. Where there is a necessity for mentioning a particular thing, but none whatever for mentioning another thing, to regard the mention of the former as intended to exclude the latter, would be an exceedingly unnatural and unreasonable rule of interpretation. Here, the power of the legislature to establish courts, inferior to the circuit court, is given in the broadest terms, without any restriction as to the mode of selecting the judges; and, consequently, the legislature might provide for any number of judges, and any mode, or modes, for their selection, which its wisdom might suggest. Not so as to circuit judges; the constitution had fixed their number, one only for each circuit, who must be elected by the people. Without express authority, therefore, it would not have been competent for the legislature to provide by law for a temporary judge, to be appointed to act while the judge elected was in office. Hence, the necessity of an additional section to give that authority. But, as to the inferior courts, it would have been a work of supererogation to attempt to enlarge a power already given in terms comprehensive enough to include every possible thing.

We conclude, therefore, not merely that it is not clear that the act in question is unconstitutional, but that it is

undoubtedly within the purview of legislative authority. That it is so is a matter of congratulation.  The case at bar involves but a few dollars, but a different decision of the question would have involved consequences, and wrought mischief, which no man can calculate.

All the judges concurring, the judgment is affirmed, with costs.

*T. A. Hendricks* and *O. B. Hord,* for appellant.

*L. & W. O. Sexton,* for appellee.