THE STATE, on the relation of McCoy *v.* THORN.

BILL OF EXCEPTIONS.—TIME OF FILING.—The statutory rule, that the time within which an act is to be done, &c., shall be computed by excluding the first day and including the last, applies to the filing of bills of exceptions.

APPEAL from the *Knox* Common Pleas.

ELLIOTT, J.—Suit in the name of the State, on the relation of *William McCoy* and his wife, *Nancy Ann McCoy,* against *Asa Thorn,* the surviving surety on a guardian's bond.

It is alleged in the complaint that on the 19th day of June, 1852, *James Thorn,* who has since deceased, was duly appointed the guardian of the persons and estates of *Hiram Wilson* and the relator, *Nancy Ann Wilson,* who has since intermarried with the said *William McCoy;* that the said *James Thorn* thereupon executed his bond as such guardian, with the defendant *Asa Thorn* and *Philip Wilson,* who has also since deceased, as his sureties; that in said bond the said *Nancy Ann* is erroneously named *Mary Ann;* that said guardian received the sum of $297.67, money belonging to said *Nancy Ann,* which remained in his hands at the time of his death, and has never since been paid, &c. A copy of the bond is annexed to the complaint. It is in the penal sum of $250, with a condition that said *James Thorn* shall discharge the duties and perform the trusts committed to him as guardian of the persons and estates of *Hiram Wilson* and *Mary Ann Wilson,* minor children of *John Wilson,* late of *Knox* county, deceased, during their minority, and render to the court a just and true account of said guardianship when thereunto required.

The defendant answered in four paragraphs:

1. A general denial.

2. That the guardian in his lifetime fully paid over and accounted for all moneys received by him.

3. Payment to *Reel,* a guardian appointed for said *Nancy Ann* after the death of said *James Thorn.*

4. Payment to the relators.

Reply in denial of the 2d, 3d and 4th paragraphs. A trial of the issues by the court resulted in a finding and judgment for the defendant, a motion for a new trial having been overruled.

The reasons stated in the motion for a new trial are:

1. The finding of the court is contrary to the evidence.

2. The finding of the court is contrary to law.

A bill of exceptions contains the evidence. A preliminary question, however, is presented by the appellee, which it is necessary to dispose of before looking into the evidence. The cause was tried on the 11th of *May*, 1866, and on the 12th day of the same month the court, by agreement of the parties, allowed the appellants " thirty days time to prepare and file their bill of exceptions." The bill of exceptions, containing the evidence, was filed in the clerk's office on the 11th day of *June*, 1866, which, the appellee insists, was after the time limited by the court, and, therefore, that the evidence is not properly in the record, and cannot be reviewed by this court. *Brown* v. *Buzan*, 24 Ind. 194, is cited as an authority in point. There the question arose upon the construction of a contract, and it was held that where an act is to be done within a given number of days " from the time of the contract," the day upon which the contract was made must be counted as a whole day in making the computation. The adjudicated cases are not uniform upon the point involved in that case; but it is not applicable to the question presented here. Section 787 of the code declares that " The time within which an act is to be done, as herein provided, shall be computed by excluding the first day and including the last. If the last day be *Sunday*, it shall be excluded." 2 G. & H. 332. And section 343 provides that "the party objecting to the decision of the court must except at the time the decision is made; but time may be given to reduce the exception to writing, but not beyond the term, unless by special leave of the court." 2 G. & H. 209. In this case, the time given by the court to the

appellants, within which to file their bill of exceptions, was under the authority conferred by the statute, and we think the statutory rule of computing time applies to it. Then, excluding the 12th of *May*, the day on which the time was given, and including the 11th of *June*, the day the bill of exceptions was filed, and we have in *May* nineteen days, and eleven in *June*, making thirty. The bill of exceptions was filed on the thirtieth day, and was therefore in time.

It is clear from the evidence that, of the amount of money which came into the guardian's hands, belonging to his ward *Nancy Ann*, there remains unpaid an amount, including interest, equal to the penalty of the bond. This fact is not controverted here by the appellee's counsel; but an effort is made to sustain the judgment of the Common Pleas on other grounds. The finding for the defendant is a general one, and the record does not show the grounds upon which it was based; but it is said in the appellant's brief that the court held that the evidence failed to show that the relator, *Nancy Ann*, is the same person of whom *James Thorn* was guardian.

The relators first gave in evidence the bond sued on, by which it appears that said *James* was appointed guardian of *Hiram* and *Mary Ann Wilson*. An account current, filed by *James Thorn*, as guardian, in the Court of Common Pleas of *Knox* county, on the 28th day of *June*, 1860, was then given in evidence, which commences thus:

"*James Thorn*, guardian of *Hiram* and *Nancy Wilson*, minor heirs of *John Wilson*, deceased, in account with his said wards." He then charges himself with—

Amount due *Nancy Ann Wilson* on last settlement, made *March* 21, 1858......................$288 65
Interest up to this date......................  30 00
 
$318 65
And is credited with the sum of......................  21 00
 
Leaving a balance due the ward of..........$297 65

This account current shows that *Hiram Wilson* was then over the age of twenty-one years, and his receipt for the balance due him from the guardian was filed, and the guardianship, as to him, finally settled.

*Asa Thorn*, the defendant, was then sworn, at the instance of the appellants, and testified that *James Thorn*, the guardian, died in *November*, 1860; that he was the guardian of two of the children of *John* and *Ruth Wilson*, deceased, one a boy, the other a girl; that the girl's name was *Mary Ann*, and that he did not know that she was ever called *Nancy Ann;* that said *John* and *Ruth Wilson* had four children, but *James Thorn* was only guardian of two of them; that after the death of *James Thorn*, one *Reel* was appointed guardian of said *Mary Ann*, but that she soon afterward married a man by the name of *Ray*, who subsequently died, and his father, *John Ray*, then became her guardian; that soon after she was married to the relator, *William McCoy*.

The defendant gave in evidence an account current filed by *James Thorn*, as such guardian, on the 21st of *March*, 1858, in which the relator is named *Nancy Ann Wilson*. It appears by that account current that there was then in his hands, belonging to said "*Nancy Ann*," after deducting all credits, the sum of $288.65. This is the same balance carried forward into the account current filed *June* 28, 1860.

This evidence seems to establish, beyond reasonable controversy, that the relator, *Nancy Ann McCoy*, is the same person of whom said *James Thorn* was appointed the guardian, and is the same person named in the bond sued on, though erroneously, as *Mary Ann Wilson*, but whom the guardian, in all his subsequent settlements, correctly names *Nancy Ann*.

The defendant in his evidence calls her *Mary Ann*, and says he did not know that she was ever called *Nancy Ann*. He did, however, know that she was so called in both the guardian's accounts current, for they were both then before him, one of which he gave in evidence. But the identity of the person is clearly shown by his own evidence.

It is contended by the appellee that the evidence does not show a breach of the bond, for the alleged reason that a demand of the surety is unavailing until the principal has made default. This may be true, but here the death of the principal terminated the guardianship, and rendered the sureties liable for the amount of money in the guardian's hands, belonging to the ward, at the time of his death. It was not necessary that the ward should first resort to a suit against the legal representatives of the guardian, though the evidence shows that the claim was filed against the estate of the guardian, and the amount allowed by the court, but remained unpaid. ·

We think the finding of the court is not sustained by the evidence, and that a new trial should have been granted.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*J. C. Denney* and *G. G. Reily*, for appellant.

*C. M. Allen* and *F. W. Viehe*, for appellee.