### McNulty *v.* Connew.

CITY.—*City Judge.—Jurisdiction.*—A city judge, elected in pursuance of an ordinance providing that he shall possess the judicial power and perform the judicial duties possessed and performed by the mayor under the provisions of the act of March 14th, 1867, in reference to the incorporation of cities (Acts 1867, p. 33), has no jurisdiction to arraign, try, and commit a person to jail for the violation of a city ordinance.

SAME.—*Mayor.—Jurisdiction.*—By the act of March 14th, 1867, in reference to the incorporation of cities, the mayor of a city has exclusive jurisdiction of cases for the violation of city ordinances.

SAME.—The act in reference to the incorporation of cities, approved March 14th, 1867, repealed the act of December 20th, 1865, though in the repealing section the year in which the act repealed (of which the title is correctly recited) is said to have been approved is given as 1863 instead of 1865.

From the Judge of the Tippecanoe Circuit Court.

*R. P. DeHart* and *J. R. Coffroth,* for appellant.

*R. P. Davidson, J. C. Davidson, Behm, Park & Behm, R. C. Gregory,* and *W. B. Gregory,* for appellee.

DOWNEY, J.—This was a proceeding by *habeas corpus,* on petition of the appellant against the appellee, as keeper of the city prison of the city of Lafayette.

The question presented is as to the power of a city judge to take and exercise jurisdiction of actions for violations of the city ordinances, and to commit to prison parties found guilty.

On the 2d day of February, 1874, the city council adopted

and put in force an ordinance declaring that it was deemed expedient, as a matter of economy, that a city judge, for the city, should be elected, and providing, in the first section, that at the general election for city officers, to be held on the first Tuesday in May, 1875, and at all subsequent elections, there should be elected a city judge. In the second section, it was and is provided, that the city judge so elected shall possess the judicial power and perform the judicial duties that are now possessed and performed by the mayor of the city under the provisions of sections 17, 18, 19, and 20 of the act of the General Assembly of the State of Indiana, entitled "an act to repeal all general laws now in force for the incorporation of cities, prescribing their powers and rights, and the manner in which they shall exercise the same, and to regulate such other matters as properly pertain thereto," approved March 14th, 1867 ; and he shall qualify for his office and give bond in the same manner as the mayor is by law required to qualify and give bond. The other sections of the ordinance fix the compensation of the judge and mayor, and repeal conflicting ordinances.

Afterward, on the first Tuesday of May, 1875, Hon. William S. Haggard was elected city judge, and qualified as such.

On the 23d day of August, 1875, the appellant was arrested and arraigned before the said city judge for a violation of one of the ordinances of the city, and on examination was found guilty and fined. Refusing to pay the amount of the fine and costs, he was committed by the judge to the custody of the appellee, as keeper of the city prison. On his petition, the appellant was brought before Judge Vinton, on *habeas corpus*, who, after an examination of the cause of his commitment, remanded him to the custody of the appellee as such prison-keeper. Thus the question is presented, by an appeal to this court, as to the authority of the city judge to take and exercise such jurisdiction.

The eighth section of the act of March 14th, 1867, says:

"The officers of such city shall consist of a mayor, two councilmen from each ward, a city clerk, assessor, treasurer, civil engineer, street commissioner, and marshal, and if the

common council deem it expedient for the best interests of the city, a city attorney and city judge."

It is provided in section 17, as follows:

" It shall be the duty of the mayor to see that the laws of the State and the by-laws and ordinances of the common council be faithfully executed within such city ; he shall be a conservator of the peace, and, as such, shall have, within the city limits, the powers conferred upon justices of the peace for that purpose ;   *   *   he shall hold a city court every day, Sunday excepted, at a place to be furnished by the common council.   While sitting as such court, he shall have exclusive jurisdiction of all prosecutions for violations of the by-laws and ordinances of the city and township in which such city is situated ; he shall have, within the limits of said city, the jurisdiction and powers of a justice of the peace in all matters, civil and criminal, arising under the laws in this State, and for crimes and misdemeanors his jurisdiction shall be co-extensive with the county in which such city is situated," etc.

There is no provision in the act declaring that when a city judge has been provided for and elected, he shall have and exercise the same jurisdiction thus conferred upon the mayor, either exclusively or concurrently with the mayor, or that he shall have any jurisdiction whatever.   In several places in the act, the words " mayor or city judge " and " city judge or mayor " are used in speaking of certain official duties.   See *Howard* v. *Shoemaker*, 35 Ind. 111.

In the acts, preceding that now in force, of 1857 and 1865, this provision is found, which is wholly omitted in the present statute :

" If the common council shall deem it expedient for the interests of such city to cause a city judge to be elected, the same may be done at any general election at which the mayor shall also be elected, and such city judge shall give the like bond as the mayor is herein required to give, and he shall, from and after his due qualification, perform all the judicial duties herein required to be performed by the mayor."

It is impossible for us to find, from anything contained in

the act now in force, that the city judge, when elected, is to supersede the mayor in his judicial duties, for the plain reason that there is no language of the act which attempts to express such an intention. Judge Dillon, in his work on Municipal Corporations, vol. 1, sec. 359, says:

"In creating local tribunals, however, and in prescribing their jurisdiction, it is essential that the legislature should keep in view two cardinal considerations: First. That these inferior courts will have only such jurisdiction, and can exercise only such powers, as are expressly given, or necessarily implied. Fair doubts as to the extent of jurisdiction are resolved against the corporation; to this effect are all the authorities. Second. Regard should also be had to constitutional provisions intended to secure the liberty and protect the rights of the citizen."

In *School Inspectors, etc.,* v. *The People,* 20 Ill. 525, the court said: "In construing grants of power to inferior courts, nothing is to be held by implication, as granted, unless absolutely necessary to a full exercise of its granted powers."

In *Thompson* v. *Cox,* 8 Jones N. C. 311, it is said: "The powers of a court of limited jurisdiction cannot be enlarged by implication."

In *Paine* v. *Ely,* 1 D. Chip. 37, it was held, following the language of Blackstone, that "particular jurisdictions derogating from the general jurisdiction of the courts of common law are ever taken strictly, and cannot be extended farther than the express letter of their privileges will warrant."

The doctrine of the cases in this court is the same. *The Board of Commissioners, etc.,* v. *Markle,* 46 Ind. 96, and authorities there cited.

We have seen that there is nothing in the statute which authorizes the city judge to supersede the mayor in his judicial functions and duties. The statute, as we have seen, requires the mayor "to hold a city court every day, Sunday excepted," and provides, that "while sitting as such court, he shall have exclusive jurisdiction of all prosecutions for violations of the by-laws and ordinances of the city," etc. As the city judge does not supersede the mayor in his judicial duties, and as the

McNulty v. Connew.

mayor must hold a court every day, except Sundays, and has, while sitting, exclusive jurisdiction of cases for violations of the city ordinances, we think it pretty clear that the city judge had no jurisdiction to arraign, try, and commit the appellant. If this construction shall result in the existence of a judicial officer without any causes to try, it must be attributed to oversight on the part of the legislature in failing to say what jurisdiction he shall have. No jurisdiction is expressly conferred upon him, and, according to the authorities cited, he can have none by implication, except when necessary to carry out that expressly given.

The section of the city ordinance attempting to confer jurisdiction upon the judge is wholly inoperative for such purpose. It can have no other effect than that of showing that the city council supposed that without it such jurisdiction would not exist.

It is urged by counsel for appellee that the act of March 14th, 1867, did not repeal that of December 20th, 1865, because in the repealing section, section 94, the act is mentioned as bearing date in 1863, instead of 1865, and that, therefore, the act of 1865 on this subject is yet in force. We think there is nothing in this point. The title of the act of March 14th, 1867, declares the intention of the legislature to repeal all general laws then in force for the incorporation of cities, and to provide a new act on the subject. In the repealing section, the title of the act of 1865 is correctly recited, but the year in which it was approved is given as 1863 instead of 1865. There was no act with such a title passed in 1863. We think the act intended to be repealed is sufficiently identified, and that it was expressly repealed by the present act. *Leard* v. *Leard*, 30 Ind. 171; *Shoemaker* v. *Smith*, 37 Ind. 122.

The judgment is reversed, with costs, and the cause remanded, with instructions to discharge the appellant from custody.

WORDEN, J.—While I concur in the opinion prepared in this case by Judge DOWNEY, speaking for the majority of the

court, yet, as there is a diversity of views entertained upon the question involved, I deem it not inappropriate that I should very briefly state the ground of my concurrence.

It seems to me that one of the three following propositions must be maintained, viz. : Either, first, that the act for the incorporation of cities vests no judicial authority in a city judge, where one is elected, in respect to violations of city ordinances; or, second, that it does vest such authority, but to be exercised by him concurrently with the mayor; or, third, that such authority is vested solely in the city judge, where one is elected, to the exclusion of the like authority in the mayor.

It is clear enough that the second proposition cannot be maintained. It was very evidently not intended that there should be two courts, that of the judge and the mayor, having concurrent jurisdiction over the same matters. If the city judge is vested with jurisdiction in such cases, it must be exclusive ; and where such judge is elected and vested with jurisdiction, the jurisdiction otherwise vested in the mayor must be ousted or taken away. The question then arises, does the act, when a city judge is elected, vest him with jurisdiction in such cases, and oust the mayor of the like jurisdiction ?

This jurisdiction is conferred upon the mayor in express terms, while it is not thus conferred upon the city judge. The statute does not provide that upon the election of a city judge he shall exercise the jurisdiction otherwise conferred upon the mayor ; nor is there anything in the act, beyond mere inference and conjecture, that takes away the jurisdiction of the mayor and vests it in the judge. The construction that shall invest the judge with jurisdiction must divest the mayor. The statute not only does not so enact, but, whatever may have been the unexpressed intention of the legislature, no just implication arises from anything expressed that works such results. The case, in my opinion, is not like that of a change of venue from the judge of one court to that of another. When the venue is thus changed, the jurisdiction passes from one to the other, if not by the express terms of the law, by irresistible implication.

If these views are correct, it follows that the first proposition must be true.

BIDDLE, J.—I dissent.　I cannot agree with my brothers in the decision of this case.

I do not hold, of course, that an ordinance of the city of Lafayette can confer jurisdiction on a court or a judge; nor would I impair, or in the least weaken, the fixed principle of law, that a local and inferior court has no jurisdiction except such as is expressly granted, or is necessary in the exercise of the expressly granted powers.　In the case before us, the judicial power of the municipality is expressly granted.　There is no room for construction as to that.　The only ground for interpretation is as to what magistrate shall exercise the power. As to the power itself, the act should be construed strictly; as to the magistrate who exercises it, liberally; and so are the books throughout.

Section 8 of the act cited provides for the election of city officers, among them a mayor, "and if the common council deem it expedient for the best interests of the city, a city attorney and city judge."

Section 17 grants the judicial power of the city to the mayor, and prescribes his duties.　The same section declares, that "in all actions in the city judge's or mayor's court, either party may have a trial by jury, and a change of venue to a justice of the peace, in such city, and an appeal to a court of competent jurisdiction, under the same restrictions and in the same manner as in a justice's court."　Again, in the same section: "The same rules of pleading and practice shall be observed in the city judge's or mayor's court that are in a justice's court."

It seems to me that here are words granting express jurisdiction to a city judge: In all actions, to grant jury trials, changes of venue, appeals to superior courts, and regulating the practice within his jurisdiction—these words confer the power to perform the acts.　There is no section in the act wherein the judicial power of the mayor is mentioned, but that

the city judge is mentioned also.    Both are continually named together, as "the mayor or city judge," or "city judge or mayor." There can be no other rational meaning, as it seems to me, given to the act, except that which grants to the city judge the same jurisdiction as that granted to the mayor before a city judge was elected.

By the second section of the act of March 1st, 1855, 2 G. & H. 9, whenever any judge is rendered incompetent, and shall appoint some other judge of a court of record, or practising attorney of said court agreed upon, the appointee has no other expressed jurisdiction conferred upon him than that he shall "preside in said cause, and dispose of the same, subject to all the rules and regulations governing circuit courts in similar cases, with power to adjourn from time to time, until the business is disposed of." The jurisdiction granted by this act is no more explicit than that granted by the act in the case before us, yet it has been held valid by this court by repeated decisions during twenty years.

In *Feaster* v. *Woodfill*, 23 Ind. 493, it was held, under the act of 1855, just cited, in the court of common pleas—a court having no jurisdiction except such as was expressly granted— as "well settled that such an appointment may be made, and when made, even in a case not within the act, that it gives a color of right to the office, so as to make a court *de facto*, if not *de jure;* that in a case when the appointment is regular on its face, the objection must be made at the trial, or all objections to the authority of such appointee will be deemed waived." See, also, *Brown* v. *Buzan*, 24 Ind. 194.

In *Mitchell* v. *Smith*, 24 Ind. 252, the court states the case as follows : "The Hon. Solomon Blair tried the cause in the common pleas, acting as judge thereof, he not then being the regular judge of that court. No objection was made to him, nor does the record affirmatively show his authority. It is wholly silent upon that subject. His authority is questioned for the first time here.

"This question was recently before us, in *Feaster* v. *Woodfill, supra,* and received very careful consideration, and upon

principle and authority, and in view, also, of the vast mischief which, it seemed to us, must result from a contrary doctrine, we held that when the record was silent as to the authority of the person acting as judge for the time being, and no question concerning his authority was made below, it was too late to make it in this court, and that, under such circumstances, we would hold his proceedings valid. Some reflection since has tended only to confirm us in that opinion." *Kambieskey* v. *The State*, 26 Ind. 225 ; *Watts* v. *The State*, 33 Ind. 237 ; *Hyatt* v. *Hyatt*, 33 Ind. 309 ; *Winterrowd* v. *Messick*, 37 Ind. 122 ; *Rose* v. *Allison*, 41 Ind. 276 ; *Lerch* v. *Emmett*, 44 Ind. 331.

In the case of *Glenn* v. *The State*, 46 Ind. 368, under the same statute and in a case also from the court of common pleas, this court say : " A change of judge, in such case, does not work a change of court. The court continues the same. Public policy requires this rule."

So in the case before us, the change from mayor to city judge does not change the court, nor the jurisdiction, and public policy, if nothing else, requires the rule.

Section 9 of the act organizing this court, 2 G. & H. 2, enacts, that " such " (the supreme) " judges, in their respective districts, may preside at the trial of any case pending in any county thereof, wherein the circuit judge is incompetent to preside." There is nothing in the statute anywhere as to what jurisdiction a supreme judge in such a case shall have, nor what power he shall exercise. A supreme judge, as such, has no original jurisdiction. He takes the jurisdiction and powers of the circuit judge. The jurisdiction to the circuit court has already been granted. It were useless, in express terms, to grant it again. There is no change of court, but simply a change of the judge. So in the case we are considering, there was no change of court, no change of jurisdiction, no change of power—these had already been granted—but simply a change of the magistrate—the judge—who should hold the court.

In the latter part of section 77, 3 Ind. Stat. 548, it is provided, that " when the objection is to the judge of the circuit court, any other circuit judge, or judge of the common pleas, may hold the court and try the cause." Without any other grant of jurisdiction or power, it has been repeatedly held that the " other " judge, so called to " hold the court and try the cause," has the same jurisdiction and power of a circuit judge. And this court has gone still further, and held, in *Ex Parte Wiley,* 39 Ind. 546, that the words " any other circuit judge, or judge of the common pleas," should be so interpreted as to include the judge of a criminal court; saying that "while the judge of the criminal court was not the judge of a circuit court, within the meaning of the constitution, we think he was a circuit judge within the meaning and intent of the legislature. This construction, it is believed, will better subserve the public convenience, and carry out the true intent of the legislature, than to hold that the judges of the several criminal courts could not be called in such cases." So thinks the writer, that to hold that a city judge has the jurisdiction and power of a mayor will better subserve the public interests, and carry out the true intent of the legislature, than the opposite view. And in this case the judge is named by his title, while in that case the judge is called by another title than that given him by law, and exercises in his own court altogether different jurisdiction and powers from those granted to the court wherein he is called to preside.

The case just cited is also in point with the one before us in other respects. It is this :

" James M. Wiley was indicted in the circuit court of Decatur county for the crime of murder. He filed an affidavit that he could not have a fair and impartial trial before the judge of that court, the Hon. Jeremiah M. Wilson, and thereupon the judge called to preside at the trial of the cause the Hon. George H. Chapman, the judge of the Marion Criminal Court. Wiley objected to the competency of Judge Chapman to preside at said trial, but his objection was not sustained. He was tried before the latter judge by a jury, convicted, and sentenced to

McNulty *v.* Connew.

imprisonment in the penitentiary for life.  He applied for a writ of *habeas corpus*, and claimed to be discharged from imprisonment in the penitentiary, on the ground that Judge Chapman, being the judge of the Marion Criminal Court, and not the judge of a circuit court or court of common pleas, was incompetent to try said cause, and had no jurisdiction in the premises; and, therefore, that the judgment of condemnation was a nullity, and did not authorize the warden of the State's prison to detain him.  The writ was issued, and upon a hearing of the cause in the court below, Wiley was remanded to custody."

The judgment was affirmed by this court.  There was no express jurisdiction or power granted to Judge Chapman, as the judge of the Marion Criminal Court, to try Wiley; the jurisdiction and power were granted to the court in which he was called to preside, and if there was no authority expressly granted to Judge Haggard, as city judge, to try McNulty, he found it expressly granted to the court of the mayor, whose place he was elected to supply.

These statutes, under which various judges and unofficial persons, by appointment, have held the several courts of this State, have been in force, held valid, and approved for nearly a quarter of a century.  The act under which city judges are elected, and under which this case arises, has remained in undisputed force during eight years.  Litigants and lawyers have recognized its jurisdiction and power; officers have obeyed its precepts; much of the minor litigation of the cities has been settled by it; large sums of money have been collected on its judgments, and paid into the public treasury; it seems to me, therefore, that a court should hesitate long before it declared all of this work a nullity, and thus subject the city judges and the public to the disastrous consequences which must inevitably flow from such a decision.  In my judgment, no decision should be made which reverses a long established practice, unsettles rights acquired in good faith, and disturbs the order in the administration of public justice, unless required by the strictest constitutional necessity.

Upon principle, authority, and reason, in my opinion, the judgment below should be affirmed.

PETTIT, C. J.—I concur in the opinion expressed by Justice BIDDLE.

Opinions filed May term, 1875; petition for a rehearing overruled November term, 1875.