# SUPREME COURT OF JUDICATURE

#### OF THE

## STATE OF INDIANA,

### AT INDIANAPOLIS, NOVEMBER TERM, 1881, IN THE SIXTY-SIXTH YEAR OF THE STATE.

---

No. 8957.

### CARTMEL v. NEWTON.

PRINCIPAL AND SURETY.—*Contract for Extension of Time.*—The assent of a surety that the creditor may give time to the principal, upon condition that the latter will perform certain stipulations within a definite time, must, as to time, be performed by the principal strictly according to its letter, or the surety will be discharged.

SAME.—*Construction of Contract.*—*Discharge of Surety.*—A surety consented in writing that upon the principal securing to the creditor in a certain manner, within ten days, one-fourth of the indebtedness, the creditor might discharge him from the whole debt, and hold the surety for the remainder. The principal assented to the terms proposed within ten days, but did not give the securities provided for until afterwards. *Held*, that, on behalf of the surety, time was of the essence of the contract, and he was therefore wholly discharged.

CONTRACT.—*Modification.*—*Acceptance.*—In order to constitute a contract, it is essential that the proposition of one party should be assented to by the other, exactly as made. A modified acceptance can not make a valid contract until the one who makes the proposition assents to the modification asked by the other.

From the Shelby Circuit Court.

*T. B. Adams* and *L. T. Michener*, for appellant.

*B. F. Love* and *H. C. Morrison*, for appellee.

Cartmel *v.* Newton.

ELLIOTT, C. J.—Appellant and one Thomas N. Donnell were sued by the appellee upon a promissory note executed by them. The appellant's answer is in two paragraphs. The first alleges that appellant executed the note as surety for Donnell; that appellee had notice of that fact; that on the 17th day of April, 1876, he, with other creditors of Donnell, made the following proposition to him:

"We, the undersigned creditors of T. N. Donnell, of Shelby county, Indiana, in consideration of T. N. Donnell executing his notes, payable in six, twelve, eighteen and twenty-four months, and also the said T. N. Donnell and his wife executing a mortgage on the farm owned by said Donnell, in Shelby county, Indiana, consisting of (212) acres, and provided that at the time of executing of the mortgage there be no other incumbrance other than a mortgage now held by the North-Western Life Insurance Company for $3,500.00 and interest to secure said notes, agree to accept in full of our respective claims against said Donnell, including as also on such claims that he may have entered himself as security for Bennett Powell; that the said Powell may be unable to pay, at the rate of twenty-five cents to the dollar; and to effect such arrangement we, the undersigned, do hereby appoint and select John Blessing and David Grubb to have such above terms carried out, and that said mortgage and notes can be executed to them for the benefit of the creditors, and that the same be carried out within the next ten days. April 17th, 1876." At this point are attached the signatures of the creditors. After the names of the creditors is written the following: "In consideration of my creditors having agreed to accept in full of their respective claims against me the per cent. as stated within, I agree to accept John Blessing and David Grubb as trustees for said creditors, and will immediately assist them in obtaining the correct amount of my indebtedness that I may be bound for as security, and to cause to be executed a mortgage signed by myself and wife over my land situate in Shelby county, Indiana, consisting of two hundred

and twelve acres; said land to be free from and clear of all incumbrances, except as to one mortgage of three thousand and five hundred dollars, and the interest thereon, given to North-Western Life Insurance Company, to secure four notes to be executed by me to said Blessing and Grubb, as trustees for said creditors, for the amount found to be payable by me according to the within article, and said notes to be payable in six, twelve, eighteen and twenty-four months, without interest. Said mortgage and notes as above specified to be executed and delivered to said Blessing and Grubb within three days after notification by said Blessing and Grubb. April 27th, 1876.                                T. N. DONNELL."

It is also averred that, to carry into execution this agreement, Grubb and Blessing were appointed trustees; that the trust was accepted by Blessing; that the notes and mortgage provided for in the agreement were executed; that afterwards, on the 19th day of May, 1876, the trustee, in discharge of the duties of his trust, accepted for the appellee and other creditors of Donnell, the notes and mortgage, without the consent of the appellant.

The second paragraph of the answer is substantially the same as the first. There are no facts stated in it which materially change the character of the defence.

The first paragraph of the appellee's reply admits that appellant was Donnell's surety, and alleges that after the note was executed, and while the principal was financially embarrassed and unable to pay his debts, appellee and other creditors executed the contract set forth in the answer; that it was agreed between appellant and the appellee that he should join with the other creditors of Donnell in the compromise contract; that appellant should remain liable upon the note for seventy-five per centum; that, as evidence of appellant's agreement to the contract between Donnell and his creditors, he affixed his signature to it under the style of Palmer Cartmel. The second paragraph of the reply is in all material respects the same as the first.

The point first argued is the sufficiency of the reply.

It is stoutly maintained that the written contract to which appellant assented required the full performance of its stipulations within ten days from the 17th day of April, 1876, and that performance includes the execution of the notes and mortgage provided for in the written instrument. The limitation upon which appellant's counsel build their argument is expressed in these words: "And that the same be carried out within the next ten days. April 17th, 1876." To break the force of this argument the counsel for the appellee insist that the contract was carried out when Donnell executed it on the 27th day of April, 1876. The first proposition by which this general position is supported by counsel is, that the execution by Donnell was within ten days from the 17th of April, because both the 17th and 27th are not to be counted. Whether both days are to be counted in computing time in cases of contracts, is a question upon which there is much conflict. Mr. Bishop lays down the rule that one day only shall be counted, but the decisions of this court declare a different doctrine. *Brown* v. *Buzan*, 24 Ind. 194; *Tucker* v. *White*, 19 Ind. 253; Bishop Contracts, section 749.

It is held in *State, ex rel.*, v. *Thorn*, 28 Ind. 306, that the statutory rule embodied in section 787 of the code of 1852 does not apply to contracts, so that we can not act upon the statutory rule in the present case. We do not find it necessary to decide whether, in computing time in cases of contracts, both the day of the promise and the day of the performance are to be included. We think the material and controlling question is, whether Donnell's assent to the proposition can be deemed to be "carrying out the same."

Contracts are to be construed according to the intention of the parties. The evident intention of the parties to the contract under examination was, that Donnell should perform the contract within ten days, by executing the notes and mortgage for which it made provision. The language employed forbids the inference that the parties meant assent and not perform-

ance. To assent is one thing, to perform is another. Assent to a proposition creates, but does not "carry out," a contract. Without assent there is no contract, but assent is not performance. Until assent, there is no contract to perform. The words used in the clause quoted mean performance, not assent. " To carry out" a contract is more than the signing and delivery. Carrying out comes after the execution of the contract; it is performance. The contract entered into between Donnell and his creditors was not carried out by him within the time limited.

Appellee's counsel argue with much force that time was not of the essence of the contract, and that the rights of the contracting parties were not injuriously affected by the failure of Donnell to execute the notes and mortgage within the prescribed time. At law, time is of the essence of the contract. If a man contracts to perform an act within a given time, he must do it within the time limited. This is a long and well settled rule.

Equity takes a somewhat different view. It is the general rule in equity, that " time is not, in general, the essence of the contract, and may, in a court of equity, under certain circumstances, be disregarded." Willard Eq. Juris. 293. The rule is somewhat differently stated by Judge STORY, who says: " Time is not generally deemed in equity to be of the essence of the contract, unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contract." 1 Story Eq. Jur., sec. 776. This doctrine has received the approval of this court. *Brumfield* v. *Palmer*, 7 Blackf. 227 ; *Ewing* v. *Crouse*, 6 Ind. 312 ; *Day* v. *Patterson*, 18 Ind. 114. The general rule is, it will be observed, stated in guarded terms. The soundness of the rule itself has been doubted by able lawyers. It is, at all events, a rule to be stated with care and applied with caution. If not, there is danger of courts making, rather than enforcing, contracts. The reason for the rule shows the necessity of applying it with scrupulous care.

The author from whom we first quoted says: " A court of equity, in holding that time is not of the essence of a con-

tract, proceeds upon the principle that, having regard to the nature of the subject, time is immaterial to the value, and is urged only by way of pretence or evasion." While the general rule is as stated, it is true that it can not prevail where the parties, by their conduct or their contract, have made time essential. In *Ewing* v. *Crouse, supra,* the court quoted with approval the statement: " But where it necessarily follows from the nature and circumstances of the contract, that the parties intended to stipulate for a particular thing to be done at a particular time, such a stipulation should, even in a court of equity, be carried literally into effect." Said Baron ALDERSON, in *Hipwell* v. *Knight,* 1 Y. & Col. 401:

"After examining with as much attention as I can the various cases brought before me during the argument, it seems to me to be the result of them all that a court of equity is to be governed by this principle—it is to examine the contract, not merely as a court of law does, to ascertain what the parties have in terms expressed to be the contract, but what is in truth the real intention of the parties, and to carry that into effect. But in so doing, I should think it prudent, in the first place, to look carefully at what the parties have expressed, because, in general, they must be taken to express what they intend; and the burden ought, in good reason, to be thrown on those who assert the contrary."

The contract which we are here examining plainly requires that the acts of Donnell shall be performed within the time limited. This is as much an essential element of the contract as any other contained in it, and it would require a strong and extreme application of the equitable rule to set aside this express stipulation of the parties. But there are other circumstances which require our attention. The relationship which the appellant occupied is to be considered. As the surety of Donnell, he had a right to stand upon the strict letter of his contract. As a surety, he had a right to require his creditor to refrain from fettering himself by a covenant not to sue, or by an agreement for the extension of time. It

Cartmel *v.* Newton.

may well be, that, to a surety situated as was the appellant, time was of the essence of the contract to which he became a party. Important rights were yielded by him. Is it for the courts to say that the consideration of time was not as essential to him as was any other part of the contract? Shall the courts say that a condition concerning the time of performance, which was written in the contract into which the surety entered, was not essential? It is difficult, if not impossible, to find any solid ground upon which to disregard the express stipulation of this contract respecting the time of performance. The appellant, as the surety of the debtor, who, by the composition with his creditors, was to secure a discharge, had a right to make it a condition of his assent that the debtor should perform the contract within a designated time. It must be kept in mind that the effect of this contract was to let the principal debtor go "scot free" upon the payment of a small portion of the debt, and to hold the surety for the remainder. If ever there was a case where a surety might assert his right to stand upon the letter of his contract, this surely is one.

Considering the relationship of the appellant, the circumstances surrounding the parties, and the language of the contract, it must be held that the parties, at least the appellant, intended that time should be of the essence of the contract. A recent writer, in the course of a discussion of this general subject, says: "Although, in ordinary cases, time is not essential, yet it may be, and is, essential whenever the intention of the parties, as shown by the contract, is clear that the performance of its terms should be accomplished punctually at the stipulated day ; it is a matter of intention, and the intention must govern." Pomeroy Specific Performance, sec. 382.

Whether a change in a contract is or is not beneficial to a surety is not the subject of judicial enquiry. Courts will not attempt to determine whether a change in the terms of the contract will benefit or injure the surety. If it be shown that a change has been made without the consent of the surety, he

may demand to be discharged. In the case before us the only contract to which the surety ever gave his assent was one providing that the principal should perform it within a designated period, and we can find no case which will warrant the conclusion that the creditor may suffer the time to be extended without the knowledge or consent of the surety. The rule in favor of granting the surety the full benefit of the letter of the contract ought not to be made to yield to the rule that time is not of the essence of the contract. Both of these rules can not be given force in a case like the present; one or the other must yield, and in our opinion it must be the latter. *Evans* v. *Gallantine,* 57 Ind. 367.

In order to constitute a contract, it is essential that the proposition of the one party should be assented to by the other, exactly as made. A contract is never created unless the minds of the parties agree upon one and the same thing. The proposition which the surety signed plainly and unequivocally required that the notes and mortgage provided for should be executed within ten days. This was a material ingredient of the proposition. The surety never signified his willingness to assent to any other contract. He did not become a party to any other. As the creditor chose to permit the principal to secure his release upon other terms than those to which the surety had assented, he has no right to enforce the claim against the latter.

The proposition in which the surety joined provided that the notes and mortgage should be executed within ten days from the 17th day of April. The assent made to that proposition on the 27th day of that month provided that the notes and mortgage should be executed within three days after notification. This was an essential modification of the proposition which the appellant joined in making. A modified acceptance of a proposition can not make a valid contract. The appellant was entitled to have his proposition accepted as he made it. A proposition is either accepted or rejected, and a modification is a rejection. Of course, the parties may subse-

quently agree upon a modification of the original proposition; but, until the person who makes the proposition assents to the modification asked by the party to whom the proposition is made, there is no contract. Until then there is no meeting of minds, which is always indispensably essential. The appellant's proposition not having been accepted, he was not a party to the contract which secured the discharge of his principal.

Other interesting questions are discussed, but we deem it unnecessary to prolong this opinion by considering them, as the judgment must be reversed for the error committed in overruling appellant's demurrers to the reply of the appellee.

Judgment reversed.