JACOB CARPENTER *vs.* JOHN CATLIN and others.

A rail road company having become insolvent and unable to pay its debts, certain of the bondholders and other creditors agreed that they would purchase the road, &c. at any sale that might be made thereof, and would organize a new company; that the new company should execute a first mortgage on the road to the amount of the then existing first mortgage on the old road to secure bonds of the new company; the bonds under the old mortgage to be exchanged for the new bonds. The subscribers to the agreement agreed to surrender their bonds, with all the coupons thereon, whenever they should be required so to do, and to receive in lieu thereof the new bonds. The plaintiff, a bond-holder, signed this agreement, and received notice to surrender his bonds, but failed to do so until after the purchase of the road and the formation of the new company. *Held*, that not having complied with the terms of the contract, he had no right to claim any benefits under it, or to insist on the delivery of new bonds.

THE plaintiff was the holder of five bonds of the Milwaukee and Mississippi Rail Road Company. That company became unable to pay its debts, and certain of the bondholders and other creditors agreed that they would purchase the road, &c. at any sale that might be made thereof, and would organize a new company under a law of Wisconsin, which had been previously passed; that the new company should execute a first mortgage on the road to the amount of the then existing first mortgage on the old road, the bonds, under the old mortgage, to be exchanged for the new bonds; and the subscribers agreed to surrender to the trustees or attorneys appointed under such agreement, the bonds with all the coupons thereon, "whenever they shall be required so to do, and to receive in lieu thereof, and in full satisfaction therefor, the mortgage bonds below named, and the different classes of stock of the new company at the par value thereof, as provided" therein. The plaintiff was a subscriber to this agreement for five bonds, amounting to $4500. In August, 1860, trustees and attorneys were appointed; and on January 18, 1861, such trustees purchased the road for the purpose stated in the agreement. A corporation was afterwards formed by such trustees, and the title to the property vested in the corporation. After the

corporation was organized, they executed and delivered to trustees a mortgage and bonds of the new company, to be delivered to the holders of the several bonds before mentioned on their being surrendered. By the decree of foreclosure, it was provided that the purchasers might pay for the same in the bonds of the Milwaukee and Mississippi Rail Road Company.

The plaintiff brought this action to compel a specific performance, viz. to exchange his two old bonds for two bonds of the new company. The referee finds that the trustees and attorneys never made any formal demand or requirement of the plaintiff for the surrender by him to them of the bonds so held by him in conformity with the agreement, but that in September, 1860, they gave notice to the holders of the first mortgage bonds and to the plaintiff, that it was expected the road would be sold under the foreclosure, and that it was necessary they should have immediate control of the bonds, and requested the persons notified before 31st October, 1860, to deposit their bonds with them, and to receive a certificate, and that the bonds would be kept in some bank in New York. In pursuance of such notice, the plaintiff deposited three bonds held by him, but did not deposit the two for which this action is brought until September, 1861, when he tendered the bonds and asked for the new bonds in exchange. The trustees refused, on the ground that the surrender was not made as required by the notice and by the agreement of July, 1860.

The referee also found that the trustees had paid into court sixty per cent on the face of the bonds held by the plaintiff, and that the same remains in court, applicable thereto. That the trustees have received and hold bonds, applicable to the plaintiff's bonds and preferred stock, sufficient to pay the plaintiff for the bonds held by him under the agreement.

The referee found for the plaintiff, and judgment was rendered directing the trustees to deliver to the plaintiff the bonds, &c. and the preferred stock, according to the agree-

ment, on his surrendering the bonds held by him and paying interest on the moneys deposited in court by the trustees.

The defendants appealed.

*B. Roelker,* for the appellant.

*A. R. Dyett,* for the respondent.

*By the Court,* INGRAHAM, P. J.   Two questions are presented to us in the disposition of this case :. One is as to the proper construction of the agreement between the parties, and the second as to the sufficiency of the demand made on the plaintiff for delivery of the bonds to the trustees.   By the contract the bondholders agreed to surrender to the trustees or attorneys appointed under the agreement the bonds, with all the coupons thereon set opposite to their signatures, whenever they should be required so to do, and to receive in lieu thereof the mortgage bonds of the new company, &c.   In order rightly to construe this contract, we must look at the whole scope and object of the agreement:   The Milwaukee and Mississippi Rail Road Company had become unable to pay its debts, and suits of foreclosure had been commenced on the mortgage given to secure classes of bondholders, and the object of the agreement was to provide for purchasing the road and organizing a new company, under the name of the Milwaukee and Prarie du Chien Railway Company.   It also was intended to choose the trustees and attorneys to act for the parties to the agreement in purchasing the road, and when purchased they were to organize a new company, and such new company was to issue bonds to the amount of the first mortgage bondholders of the old company, which the signers to the agreement agreed to receive from the new company in exchange for the bonds they held, whenever the new company should be prepared to issue them.

I think it is apparent, from these provisions, that the trustees were the mere agents of the signers of the contract.   They

had no interest of their own. The only means that was pro-vided for the purchase of the road was the bonds held by the signers of the contract, and these were to be surrendered to the trustees whenever demanded by them. It is idle to sup-pose that the trustees were required to buy a road and ad-vance the money therefor to the amount of $2,300,000, and to give the benefit of such purchase to the bondholders. On the contrary, I think it was the duty of the parties to the contract to furnish the means for such purchase, and that such was the intent of the provision requiring a surrender to the trustees, of the bonds held by the respective parties. The other provisions of the contract show that it was contem-plated that these bonds should go into the hands of the trus-tees, and be held by them for the purposes of the agreement. The time of delivery was to be fixed by the trustees. The trustees were to make the purchase, and were prohibited from doing anything whereby any party should become liable to pay any money without his written assent, and were prohib-ited from selling, hypothecating or encumbering the bonds which might come into their possession.

These views are also strengthened by the provision in the decree of foreclosure authorizing payment to be made for the rail road, when sold, in the first mortgage bonds of the old company.

It is contended, by the plaintiff, that he was entitled to receive the bonds of the new company when he surrendered the old ones. This view can not be sustained. He was bound to surrender the old bonds when demanded, but the new bonds were not to be issued until after the purchase of the road and the organization of a new company. Even after that, the trustees, under the agreement, had nothing to do with the issue of such bonds, but they were to be issued by the new company, and the parties agreed to receive from such new company the bonds at par for the old bonds. The bond-holders had, therefore, no right to insist on an issue to them

of the new bonds before they were required by the contract to surrender the old ones.

Upon this branch of the case, I think the plaintiff was bound to surrender his bonds to the company when required, and that he had no right to insist at that time on a delivery of the new ones.

The conduct of the plaintiff, in reference to some bonds held by him, shows that such was his understanding of his obligations. On receipt of the notice from the trustees, he delivered to them three bonds of the five for which he had signed the contract, and took the certificate of the trustees that he was entitled to receive new bonds therefor. His acts show that he understood and assented to this construction of the agreement.

The second question is, whether the trustees gave to the plaintiff the requisite notice. In September, 1860, notice was given by the trustees to the bondholders, among whom was the plaintiff, that it was necessary that they should have the immediate control and possession of the bonds, and requesting the holders to deposit their bonds with the trustees before the 31st of October, 1860. The plaintiff received this notice, and complied with it by a deposit of three bonds. The contract does not require a personal demand. This may be made in writing, and I am at a loss to see why the notice so served upon the plaintiff was not in all respects a sufficient demand, and one which rendered compliance with it necessary by those who wished to avail themselves of the benefits of the contract.

The demand was in writing. It specified the articles demanded, and stated the time of performance. It was in all respects full and sufficient, and the personal service of it upon the plaintiff rendered the demand complete.

There is another fact found by the referee, which shows that the plaintiff is not now entitled to the relief he asks. Upon the sale of the road, the amount of the purchase money yielded sixty per cent on the bonds held by the plaintiff. This

amount the trustees were required to pay into court for the use of the plaintiff before they could obtain the title to the road.   This money still remains in court to the credit of the plaintiff.   He has been paid in this way the amount to which he was entitled as a creditor of the old company on the foreclosure.   Not having complied with the terms of the contract, he has no right to claim any benefits under it.

Something was said, upon the argument in the plaintiff's favor, upon the ground that, inasmuch as these bonds were in the hands of the trustees, and they could make the exchange, equity would not work a forfeiture of the plaintiff's property, by holding him to a strict performance of his contract.

While this is a rule sometimes sanctioned, it is never adopted where a greater injustice would be inflicted on the other party.   And where, in consequence of the non-performance of the party seeking the aid of a court of equity to relieve him from the loss sustained by him thereby, other persons have been compelled to raise large sums of money to pay off the claims held by him, it can hardly be equitable to say that the mere interest on the money while lying unemployed in court would be a sufficient compensation.   If all the bondholders had refused to deposit their bonds as the plaintiff did, and the trustees had been compelled to raise the whole of the purchase money to pay for the road, it would hardly be urged that they all could come in, after the purchase had been completed and been found to be a profitable investment, and elect to become interested therein.   If they all could not, I see no reason why any one of them should have the right to such an election.

The judgment should be reversed, the report of the referee set aside, and a new trial ordered, costs to abide the event.

[NEW YORK GENERAL TERM, May 2, 1865.   *Ingraham, Clerke* and *Geo. G. Barnard,* Justices.]