Filed Feb. 13, 1884.

---

No. 9934.

## McClellan *v.* Coffin et al.

CONTRACT.—*Promissory Note.*—*Assignor and Assignee.*—A contract, in form a promissory note, but payable in services, containing a promise from the payee to the maker, is not a note, and is subject to all defences of the maker in the hands of an assignee.

SAME.—*Cancellation.* — *Performance.*— *Tender of.*— *Time.*—*Quieting Title.*— *Forfeiture.* — *Mortgage.* — A complaint averred the execution by the plaintiff to one of the defendants of several instruments promising to pay certain sums in painting, and a mortgage on real estate as security, which had been assigned to another defendant; that contemporaneously the payee had executed to the plaintiff a written agreement reciting that the conveyance of a city lot was the consideration for the plaintiff's contract, fixing the price of the painting, agreeing to furnish the work, and a larger amount to be paid for in cash within three years, or the plaintiff's agreement should be void; that plaintiff had been ready to do the work, of which the defendants were notified, but they failed to furnish it; that the three years had expired, and praying that the plaintiff's contracts and mortgage be cancelled.

*Held,* that the complaint was good on demurrer.

From the Wayne Circuit Court.

*H. C. Fox,* for appellant.

*C. H. Burchenal,* for appellees.

ELLIOTT, J.—It is alleged in appellant's complaint that he executed to Charles H. Coffin several instruments payable in painting; that to secure the performance of these contracts he executed a mortgage to him; that contemporaneously with

the execution of these instruments, Charles H. Coffin executed to appellant the following instrument:

"RICHMOND, IND., Sept. 29, 1877.

"Whereas Theodore McClellan has this day purchased of me lot 14, in C. F. Price's second addition to Richmond, and has given his notes in payment therefor for $550 in painting at ten, eighteen and twenty-five cents per yard, I hereby agree that I will pay to him one-third of each approved bill for work in cash, and that two-thirds of each bill shall be credited on his notes, and to furnish the work within three years or the notes to be void.

"(Signed) .. 　　CHARLES H. COFFIN."

That the notes, as they are called, were assigned to Elijah Coffin; that appellant has been ready and willing to do the work of painting, and has so notified the appellees; that they have failed to furnish the work, although more than three years had elapsed before the action was instituted. Prayer that the notes and mortgage be declared void, and that appellees be compelled to deliver them up for cancellation.

The instruments signed by the appellant are not, in a strict sense, promissory notes, for instruments payable in services, or in specific articles of property, are not, strictly speaking, promissory notes, but for convenience such instruments are often so designated. The notes, using the word in the liberal sense, are not negotiable by the law merchant, and are, therefore, subject to all defences which existed before notice of assignment.

The notes are not only payable in services, but they also contain a promise from the payee to the maker, and it is perfectly plain that the former could not impair this promise by an assignment, and it is also plain that this provision would, of itself, destroy their character as negotiable instruments. The assignee, Elijah Coffin, therefore, holds these notes subject to all defences and rights of the appellant.

There can not be any doubt as to the meaning of the language used in the contract. The agreement of the payee of

the notes to furnish the painting within a time positively and definitely fixed is as plain and unequivocal as the promise of the maker of the notes. The provision as to the consequences of a failure to furnish the painting is explicit and direct. The contract was a lawful one, and why should it not be given force according to its legal tenor and effect?

It is true that there are cases in which equity will regard time as not of the essence of the contract, but this is never true where, from the express language employed, or by necessary implication and the surrounding circumstances, it appears that the parties have made time of the essence of the agreement. It will be found that the doctrine that time is not of the essence of a contract is one of limited rather than general scope. *Cartmel* v. *Newton*, 79 Ind. 1, auth. p. 5. In a respectable treatise it is said, in speaking of this rule, that "A court of equity, in holding that time is not of the essence of a contract, proceeds upon the principle that, having regard to the nature of the subject, time is immaterial to the value, and is urged only by way of pretence or evasion." Willard Eq. Juris. 292. It can not be justly said of the contract before us that time is urged by way of pretence or evasion, for the parties have expressly fixed the value of the work contracted for, and with certainty stipulated that the time shall be three years and no more. In *Chrisman* v. *Miller*, 21 Ill. 227, it was said: "Parties have a right to make their contracts as stringent as they please, and to make time of the very essence of their contract; and if one party, without the consent of the other, allows the specified time to pass, no matter from what cause, without performing the condition the stipulated consequences must follow." This doctrine is fully sustained by the cases of *Heckard* v. *Sayre*, 34 Ill. 142; *Bodine* v. *Glading*, 21 Pa. St. 50; *Shaw* v. *Turnpike Co.*, 2 P. & W. 454; *Hipwell* v. *Knight*, 1 Younge & C. 401, as well as by the authorities cited in *Cartmel* v. *Newton, supra.*

It is certain that the holder of the obligations described in appellant's complaint could not demand money of him un-

til he had been offered work and had refused to perform it according to the terms of the contract. Where a party is to furnish another with work, he must show performance on his part before he can enforce the agreement. *Nipp* v. *Diskey*, 81 Ind. 214(42 Am. R. 124) ; *Mason* v. *Toner*, 6 Ind. 328 ; *Parks* v. *Marshall*, 10 Ind. 20 ; *Duerson* v. *Bellows*, 1 Blackf. 217. As the agreement bound one party to furnish work and the other to do it, the latter would not be in default until the former had done that which he had agreed to do, and this he could not do in accordance with the terms of his contract unless he did it within the time fixed by the contract. Time is, therefore, material, and the stipulation of the parties should not be disregarded.

It is difficult to perceive why time should be regarded as immaterial where the price is fixed, and graded according to the kinds of work, and a stipulated consequence provided for a failure to furnish the work within the time specified, for the provision requiring the work to be furnished within the time limited may have been the controlling consideration upon which the notes were executed. If courts can say that the work need not be furnished within the time fixed by the express words of the contract, then the stipulation of time is that of the courts and not of the parties, and the result in such an event would be a contract made by the court and not by the parties. Such a result would be in direct and irreconcilable conflict with the rudimental principle that courts enforce but do not make contracts. It is our opinion that the stipulation in the notes makes time of the essence of the contract.

Another question on this branch of the case remains, and that is this, is the mortgage extinguished because of the operation of the stipulation as to the notes? The usual covenant to pay the sum secured is inserted in the mortgage, and it is recited that it is given to secure unpaid purchase-money.

It is undoubtedly the general rule that the note is the principal and the mortgage the incident, and that whatever renders the note inoperative affects the mortgage in like manner.

The extinguishment of the debt extinguishes the mortgage. There may, perhaps, be exceptions to the general rule, but we decide nothing as to this, for we are satisfied that here the notes evidenced the debt, and where this is the case the mortgage ceases to be operative upon the discharge of the note.

Where written instruments are contemporaneously executed they form one contract. *Woodward* v. *Mathews*, 15 Ind. 339; *Cressey* v. *Webb*, 17 Ind. 14. We have here, therefore, but a single contract; that contract is one embracing the whole transaction, providing on what terms the debt shall be payable, and quite plainly showing that the debt evidenced by the notes is for the purchase-money, and that it is the only debt secured by the mortgage. There can be no doubt that a single debt was created, and that this debt ceased to exist when the stipulations of the contract evidencing it ceased to be enforceable. As there was but one debt, the mortgage ceased to be of force when the debt expired by the operation of the contract of the parties.

We are brought to another question: Can one who has received property, and in payment executed notes and a mortgage which have ceased to be enforceable because of a stipulation in the contract, retain possession and ownership of the property, and yet secure a cancellation of the notes and mortgage? If the appellees were suing on these instruments, it seems clear that an averment that they performed their part of the contract would be indispensably necessary. Is there any reason why a change in the position of the parties should affect the principle which underlies the rule we have stated?

It is no doubt true that forfeitures are not favored in equity. Judge Story says: "It is a universal rule in equity, never to enforce either a penalty or a forfeiture." 2 Story Eq., section 1319. Pomeroy is equally explicit, he says: "It is a well settled and familiar doctrine that a court of equity will not interfere on behalf of the party entitled thereto and enforce a forfeiture, but will leave him to his legal remedies if any, even though * no equitable relief would be given to the

defaulting party against the forfeiture." Pom. Eq., sec. 459. It must follow that if the relief here sought is strictly that of enforcing a forfeiture it can not be granted. We think, however, that the relief prayed is not strictly the enforcement of a forfeiture, but is rather the enforcement of a condition which is neither inequitable nor illegal. The cancellation is simply the removal of a cloud from appellant's title, and equity will interfere for this purpose whenever the proper case is made, even though the forfeiture of some interest may indirectly result. In *Leach* v. *Leach*, 4 Ind. 628, the court said : " The defendant held the land upon a condition subsequent, that he would, in all things substantially comply with his covenant. In such case, a failure to perform the obligation is a breach of the condition subsequent and a forfeiture of the estate, and forms the proper subject for the interference of a court of chancery." In *Devereaux* v. *Cooper*, 11 Vt. 103, a like conclusion was reached. In *Scott* v. *Scott*, 3 B. Mon. 2, and *Jenkins* v. *Jenkins*, 3 Mon. 327, a similar decision was made, the court holding that title might be quieted even though a forfeiture of an interest resulted. In *Carpenter* v. *Catlin*, 44 Barb. 75, the court granted relief in a case where the decree operated so as to work a forfeiture, the court saying : " Something was said, upon the argument in the plaintiff's favor, upon the ground that, inasmuch as these bonds were in the hands of the trustees, and they could make the exchange, equity would not work a forfeiture of the plaintiff's property, by holding him to a strict performance of his contract. While this is a rule sometimes sanctioned, it is never adopted where a greater injustice would be inflicted on the other party." These authorities clearly show that equity often interferes although a decree may produce a forfeiture. More familiar cases may be cited. Injunctions are often granted to restrain one from clouding a title by a lien which he has lost by his own neglect. The cancellation of an instrument creating a lien is in effect the removal of a cloud from a title, and courts of equity often quiet titles although an interest may be for-

feited.   In every case where one is prohibited from asserting a lien lost by his own default, there is in a certain sense a forfeiture, but no one supposes that this will prevent courts of equity from granting relief.

It seems quite clear that Coffin could not enforce the lien here sought to be cancelled ; for, as we have already shown, one who contracts to take pay in work and to furnish materials upon which it is to be bestowed can not sue without having offered an opportunity to do the work.   Judge Story says that the whole doctrine upon the subject of cancellation is referable to the general jurisdiction which a court of equity " exercises in favor of a party *quia timet.*" ; and it is certainly clear that equity will quiet a title against an apparent lien which the party has no right to assert.   We must hold that such a cloud as that cast by Coffin's mortgage can be removed, or we must conclude that Coffin, with his non-enforceable mortgage, may burden the appellant's title until the statute of limitations destroys the lien.   This would be unjust to one who has been guilty of no wrong, and is no wise in default.   It would be inequitable to permit one without a valid lien to cloud a title, and unless it be held that Coffin's mortgage may be cancelled, we, in effect, concede that he may encumber the property and injure its marketable value as effectually as one holding an effective lien.   It has been long settled that an instrument which has ceased to be effective may be cancelled : " Cases," says Story, " also may occur, where a deed, or other instrument, originally valid, has, by subsequent events, such as by satisfaction, or payment, or other extinguishment of it, legal or equitable, become *functus officio;* and yet, its existence may be either a cloud upon the title of the other party, or subject him to the danger of some future litigation, when the facts are no longer capable of complete proof, or have become involved in the obscurities of time.   Under such circumstances, although the deed or other instrument has become a nullity, yet courts of equity will interpose, upon like principles, to prevent injustice, and will decree a delivery and can-

cellation of the instrument." 1 Story Eq., sec. 705. Within this rule the present case clearly falls.

The appellees have no lien on the land by virtue of the mortgage, because that has ceased to be effective. They have no vendor's lien, because by taking a mortgage they waived the equitable lien. An express lien waives the implied one. It is established, without contrariety of opinion, that a vendor who takes a mortgage, valid when executed, waives the lien created by equity in his favor for the purchase-money. Appellees have, therefore, no valid lien on the land. As they have no lien on the land, they have no right, legal or equitable, to cloud the vendee's title.

We are not unmindful of the maxim that he who asks equity must do equity. Equity never requires that a man who is without fault shall lose the benefit of an honest contract fairly made, and, therefore, it can not be that appellant is required to convey back the land granted him by his contract. Equity does require that a party shall perform, or do all he can to perform, his contract, and this the complaint shows appellant has done.

Both at law and in equity performance is excused where the adverse party makes performance impossible. Any other rule would be unjust. If performance becomes impossible because of the party's own act, he alone must suffer, since to rule otherwise would permit him to take advantage of his own wrong.

Tender on the law-day is regarded in equity as a satisfaction of the mortgage. 2 Jones Mortg. 891. The tendency of the modern decisions is to enlarge the rule, and hold a tender good even if made after the law-day, provided it is made before foreclosure. *Potts* v. *Plaisted,* 30 Mich. 149 ; *Moynahan* v. *Moore,* 9 Mich. 9 ; *Caruthers* v. *Humphrey,* 12 Mich. 270 ; *Houbie* v. *Volkening,* 49 How. Pr. 169. In *Kortright* v. *Cady,* 21 N.Y. 343, it was said : "We have, then, only to apply an admitted principle in the law of tender, which is, that tender is equivalent to payment as to all things which are in-

cidental and accessorial to the debt. The creditor, by refusing to accept, does not forfeit his right to the very thing tendered, but he does lose all collateral benefits or securities." It was said in *Eslow* v. *Mitchell*, 26 Mich. 500, that, "And while a tender does not satisfy a debt, unless kept good, yet it discharges a lien upon property at once, when seasonably made and not accepted."

It seems clear, therefore, that the lien of Coffin's mortgage must be regarded as released if it can be said that there was a valid tender. If the lien was extinguished, then the complaint was good in so far as it sought relief against the mortgage, and if good even to this extent the demurrer was improperly sustained.

In the case of *Ferguson* v. *Popp*, 42 Mich. 115, it was held that if it be proved that the mortgagee evaded a tender, the mortgage lien will be deemed extinguished, and this holding rests upon sound principle. The case before us is closely analogous, for here the mortgagee bound himself to furnish the work, and, not having done so, evaded a strict tender. It is, indeed, the general rule that where performance is prevented by the party there need be no tender of any character. In this case, however, all the tender that the mortgagor could make was made. Shall he now lose his rights because the default of his adversary prevented him from doing more?

It must be borne in mind that the contract of the parties provides not only that Coffin shall furnish work enough to enable the mortgagor to pay his debt, but also that he shall furnish so much as will yield him one-third additional compensation in money. It would be grossly inequitable to reverse the situation of the parties and deny the appellant the right to receive painting enough to pay his debt and bring him one-third more in money, and, instead of yielding him this, require him to pay the whole debt in money. If the appellant were in any wise in default there might possibly be some show of reason for suffering such a result; but he is not in default, he has done all, and even more than, his con-

tract required. Is the party who is inexcusably in the wrong in a situation to ask of him to pay for the property in an entirely different manner from that provided by the contract? We can not conceive it possible that a man can be required to do a thing he did not agree to do, when he is in all things wholly in the right.

The appellee's contract invested him with certain rights and charged him with designated duties; now all that he could be required to do to secure these rights was to perform those duties. We do not understand that any court could require more than this of him. In the opinion of Vice Chancellor WIGRAM delivered in *Hanson* v. *Keating*, 4 Hare, 1, will be found a statement of the true doctrine upon this subject, and we quote from that opinion the following: "My opinion is, that the court can never lawfully impose merely arbitrary conditions upon a plaintiff, only because he stands in that position upon the record, but can only require him to give the defendant that which by the law of the court, independently of the mere position of the party on the record, is the right of the defendant in respect of the subject of the suit. A party, in short, does not by becoming plaintiff in equity give up any of his rights, or submit those rights to the arbitrary disposition of the court. He submits only to give the defendant his rights in respect to the subject-matter of the suit, on condition of the plaintiff obtaining his own." It is not in the power of the courts to add anything to the burdens imposed by the contract, nor to take anything from the rights secured by it. There is here no showing that the contract was unfairly obtained, nothing making it unconscionable or oppressive, and, therefore, no reason for requiring the appellee to do more than the contract required of him. A man does equity when he does all that his honest contract imposes upon him, and is entitled to have equity dealt him by making good his rights under the contract.

It may be that upon a proper showing equity would re-

lieve the appellees, but there is no such showing here; on the contrary it is confessed that there is no excuse whatever for the failure to comply with the contract. It may be that upon a proper case made relief can be granted Coffin in some appropriate form, but there is here no such case. The only case we decide is that presented by the record, and that case requires of us no more than a decision upon the sufficiency of the complaint; this is all we decide and in deciding this only adjudge that the facts stated in the complaint make a *prima facie* case for the appellant.

Judgment reversed.

Filed Feb. 21, 1884.