EDWARD H. GARCIN *vs.* PENNSYLVANIA FURNACE COMPANY & others.

Suffolk.   June 22, 1904. — September 8, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, LORING, & BRALEY, JJ.

*Contract,* Performance and breach. *Equity Jurisdiction,* Specific Performance, To relieve against forfeiture.

Where the time for the performance of a contract for the sale of most of the property of a corporation, including its going business and outstanding contracts, is extended by the parties for a period of one month and four days, and $2,500 is paid in cash for the extension besides the giving of additional security to be forfeited on non-performance, this shows conclusively the intention of the parties to make time of the essence of the contract.

A party to a contract of which time is of the essence who through his own fault fails in performance at the time appointed is not entitled to enforce a specific performance of the contract.

Equity will not relieve against the forfeiture of a deposit of money and stock upon the non-performance of a contract, where a fair interpretation of the contract shows the intention of the parties to be that the deposit shall be treated as liquidated damages in case of a failure to perform, and not as mere security for the performance of the contract.

BILL IN EQUITY, filed November 10, 1902, to compel the Pennsylvania Furnace Company to perform a certain agreement in writing dated August 27, 1902, as amended and extended by a supplemental agreement dated October 7, 1902, by delivering

a deed of property of that company, as described in the opinion, or, in the alternative, for relief from a forfeiture of $2,500 in cash and two thousand shares of stock of the Pennsylvania Furnace Company, deposited by the plaintiff with the Federal Trust Company under the terms of the contract, and praying for a decree settling the amount of damage incurred by the defendant furnace company, if any, and for a reconveyance to the plaintiff of the cash and stock upon the payment of the damages so established.

The defendants filed an answer containing a demurrer for want of equity. The case came on to be heard before *Lathrop*, J., who reserved it upon the bill and demurrer for determination by the full court, the bill to be dismissed if the demurrer should be sustained.

The contract of August 27, 1902, was as follows:

" Whereas at a duly called meeting of the stockholders of the Pennsylvania Furnace Company, a corporation duly organized under the laws of the Commonwealth of Pennsylvania held at Philadelphia in said Commonwealth on the 18th day of March, A. D. 1902, it was resolved and voted, ' That Timothy E. Hopkins, John Reed and W. M. Deen be and hereby are appointed a committee of three to sell all the property, real and personal, of this corporation to such purchaser or purchasers and upon such terms as in their unanimous judgment seems for the best interests of the stockholders. Said committee shall have full power by unanimous action, to sign the corporate name and to affix the corporation seal to all deeds, conveyances or other instruments that may be necessary to complete said sale,' and

" Whereas, it was further resolved and voted, ' That the said committee be and hereby is directed, upon the completion of said sale and the receipt of the purchase money, to pay the same into the treasury of this company. The purchaser or purchasers from said committee shall, however, be under no obligation to see that said purchase price is so paid into the treasury, but the receipt of the committee shall be a discharge of said purchaser or purchasers and binding on the corporation and stockholders.'

" Now, therefore, this agreement made at New York in the State of New York on this 27th day of August A. D. 1902, between Timothy E. Hopkins, John Reed and W. M. Deen,

acting as said committee aforesaid, hereinafter called the first party, and Edward H. Garcin of Trenton, New Jersey, acting for himself and associates, hereinafter called the second party, witnesseth:

"I. That the first party hereby agrees to sell to the second party, who agrees to purchase, for the sum of two hundred seventy thousand one hundred ($270,100) dollars in cash and the delivery of certain instruments and stock hereinafter set forth, first, the one-ninety-sixth (1/96) interest of said Pennsylvania Furnace Company in the so-called 'Cornwall Ore Banks' situated in the said Commonwealth of Pennsylvania.

"Second, the real estate of said Pennsylvania Furnace Company situated at Sheridan in the County of Lebanon and Commonwealth aforesaid, and the easements and appurtenances thereto belonging, together with the plant located thereon and all the fixtures and appurtenances at said plant and thereto belonging, not including, however, stock raw, wrought, or in process, and new supplies.

"II. That the second party hereby agrees to assume and perform all existing contracts and other obligations of said Pennsylvania Furnace Company, the fulfilment of which by said Company is made impossible by reason of its disposal of its real estate and plant as aforesaid to the second party, as per schedule 'A' hereto annexed. The contract of said Pennsylvania Furnace Company with S. H. Chauvenet, of Sheridan, Pennsylvania, the present manager of the works, shall be included in said contracts. And the second party, for his executors, administrators and assigns, agrees to keep the Pennsylvania Furnace Company, its successors and assigns, indemnified against all actions, claims and liabilities for breach of said contracts or other obligations or any of them.

"III. Payment under the terms of this agreement shall be made in the manner following, to wit; Upon the execution of this agreement and simultaneously therewith, the second party shall pay into the Federal Trust Company of Boston in the Commonwealth of Massachusetts, in trust for the first party, the sum of twenty-five hundred ($2500) dollars in cash to bind the bargain. If the second party shall refuse or neglect to complete the purchase at the time hereinafter appointed, this deposit

money shall be absolutely forfeited to the first party, and the Trust Company shall pay over the same to the first party and this agreement and all rights thereunder of the second party shall cease. But if the purchase is completed as herein contemplated, said deposit money shall be applied to the purchase price as herein provided. The second party shall, on or before the 1st day of October A. D. 1902, deliver with appropriate endorsements and assignments to said Trust Company the four thousand (4000) shares of capital stock of said Pennsylvania Furnace Company now held and owned by E. Burd Grubb of Edgewater Park, New Jersey, together with a quitclaim and release from said Grubb of all his right, title and interest in and to said Pennsylvania Furnace Company, and a release to said Company and first party of all demands of whatever nature against said Company or said first party, whether at present existing or in the future arising, including all claims for any participation in the division of the assets of said Company. It is agreed, however, that if said Grubb cannot turn over said four thousand (4000) shares of stock as above mentioned, that in that event the cash payment to said first party shall be proportionate with the above mentioned sum of two hundred seventy thousand and one hundred (270,100) dollars; that is, that said first party shall in that event receive, in addition to the above mentioned two hundred seventy thousand one hundred (270,100) dollars an amount equal to the same ratio for every share of stock short of four thousand (4000) shares that said Grubb is unable to turn over. The second party shall also pay to said Trust Company in cash the purchase price hereinbefore named, less the sum of twenty-five hundred (2500) dollars advanced as deposit money. Whereupon on tender and delivery to the first party by said Trust Company of said purchase money of two hundred seventy thousand one hundred (270,100) dollars in cash and the stock, quitclaim and release deposited by said second party with said Trust Company as hereinbefore provided, said first party shall deliver to said Trust Company for the benefit of the second party a quitclaim deed of conveyance, duly executed, of all the property herein agreed by it to be sold to the said second party.

"IV. The second party agrees to deliver the documents, shares and purchase price hereinbefore agreed by it to be delivered to

said Trust Company, and the first party agrees to deliver the deed to said Trust Company for the benefit of the first party as aforesaid at the office of said Trust Company in the City of Boston at twelve o'clock noon, October 1st, A. D. 1902, unless the parties hereto shall mutually agree in writing to an earlier date.

" In witness whereof the parties hereto have hereunto set their hands and seals.

" Timothy E. Hopkins, (S)

" Witnesses :     John Reed, ("')

" H. W. Wesson to T. E. Hopkins     W. M. Deen, ("')

         & E. H. Garcin     Edward H. Garcin. (S)

" E. A. Adler to J. R."

The supplemental contract and the receipt thereunder were as follows :

" Whereas the Pennsylvania Furnace Company, acting by Timothy E. Hopkins, John Reed and W. M. Deen as a Committee duly authorized, of the one part, and Edward H. Garcin, acting for himself and associates, of the other part, did enter into an agreement on August 27th, 1902, for the sale of certain property of said Company to said Garcin for a certain consideration, the conveyance of which property and the delivery of which consideration were by the terms of said agreement to take place at twelve o'clock noon on October 1, 1902 ; and

" Whereas the Pennsylvania Furnace Company as aforesaid was on said October 1 ready and willing to perform its part of said agreement, and did on said October 1 tender to said Garcin a deed duly drawn and executed, together with tax receipts for the years 1900, 1901 and 1902, but said Garcin was unable to pay the cash consideration in said agreement stipulated, whereby the twenty-five hundred ($2500) dollars named in said agreement was forfeited to the first party ;

" Now, therefore, this agreement made this seventh day of October, 1902, as supplementary to said agreement of August 27, 1902, to be annexed thereto and read in conjunction therewith, Witnesseth :

" That in consideration that the Pennsylvania Furnace Company will extend the time for the performance of the agreement of said Garcin in said agreement of August 27, 1902, to twelve o'clock noon November 5, 1902, and will deposit forthwith said,

deed and tax receipts duly tendered to said Garcin at twelve o'clock noon October 1 as aforesaid in escrow with the Federal Trust Company of Boston for delivery to said Garcin at twelve o'clock noon, November 5, 1902, upon receipt by said Federal Trust Company of the consideration named in said agreement of August 27th by said Garcin to be paid, without deduction for the twenty-five hundred ($2500) dollars forfeited as aforesaid,

" The said Garcin agrees to deliver to said Committee two thousand (2000) shares of the capital stock of the Pennsylvania Furnace Company duly transferred to it, which delivery is to take place contemporaneously with the delivery of said deed and tax receipts in escrow to the Federal Trust Company. Said two thousand (2000) shares, in case said Garcin is able duly to deliver the consideration and perform the agreements set forth in said agreement of August 27th on said November 5, 1902, is to be credited to the four thousand (4000) shares of stock agreed by said Garcin in said agreement of August 27 to be delivered. But in case said Garcin is not able to so perform, then said two thousand (2000) shares shall be regarded as forfeited absolutely to said Pennsylvania Furnace Company acting by its Committee, free and clear from all demand or equity of said Garcin or any person whatsoever.

" It is expressly understood and agreed, however, that the Pennsylvania Furnace Company acting by its Committee as aforesaid in granting the extension of time herein named, does not waive any of its rights under said agreement of August 27, 1902.

"Pennsylvania Furnace Co. by Timothy E. Hopkins, John Reed, W. M. Deen, Committee.

" Ed. H. Garcin, acting for himself and associates."

"Oct. 9, 1902.

" Received from Edward H. Garcin two thousand (2000) shares of the capital stock of the Pennsylvania Furnace Company under the agreement and the supplement thereto between the Pennsylvania Furnace Company, acting by Timothy E. Hopkins, John Reed and W. M. Deen, its Committee, of the one part, and Edward H. Garcin of the other part, which agreement is dated August 27, 1902, and the supplement thereto October 8, 1902, the said two thousand (2000) shares being the first

delivery on the four thousand (4000) shares of the capital stock of the Pennsylvania Furnace Company referred to in the above agreement as having to be turned in by Edward H. Garcin.

"Timothy E. Hopkins, John Reed, W. M. Deen, Committee."

*P. F. Hall & E. A. Adler,* for the Pennsylvania Furnace Company and John Reed.

*S. L. Whipple, W. R. Sears & H. W. Ogden,* for the plaintiff.

KNOWLTON, C. J.    The plaintiff, by his bill in equity, seeks first, specific performance by the defendants of a contract for a sale to the plaintiff of most of the property of the defendant corporation.    The bill shows that, at the time the contract was to be performed, the defendants were ready and willing to perform it, but the plaintiff was not ready, and was unable to perform his part.    Under such circumstances, specific performance ordinarily cannot be decreed, and never when time is of the essence of the contract.    *Thaxter* v. *Sprague,* 159 Mass. 397.    *Carter* v. *Phillips,* 144 Mass. 100.    *Rice* v. *D'Arville,* 162 Mass. 559.

The original contract contains this sentence: "If the second party shall refuse or neglect to complete the purchase at the time hereinafter appointed, this deposit money shall be absolutely forfeited to the first party, and the trust company shall pay over the same to the first party and this agreement and all rights thereunder of the second party shall cease."    It would be difficult to express more plainly the purpose of the parties to fix their respective rights finally by conditions existing at the time appointed.

There was good reason for making time an essential element of the contract.    The agreement was not merely for a sale of land whose value would not be likely to change much in a short time, and whose transfer at a particular time, or continued ownership for a while longer would not be likely to be of much importance to the owner.    It was a contract for the sale of substantially all the property of the corporation, which, according to the plaintiff's bill, owned and possessed ore rights, real estate, blast furnaces, iron raw, in process and manufactured, and which was then carrying on business, and had unfilled orders for the delivery of pig iron with about twenty-five different parties, amounting in the aggregate to eleven thousand four hundred and seven tons.    The contract was made on August 27, 1902, and

the sale was to be consummated on October 1, 1902, and afterwards, by an extension of the contract, on November 5, 1902, and the plaintiff was to assume and perform all of these contracts with third persons. It is manifest that, with reference to such property and under such circumstances, time would be likely to be of great importance to the parties.

Moreover, this is emphasized by the second contract, which is an agreement for the extension of the time. This is an assumption and acknowledgment by both parties that time was of the essence of the contract. In this the plaintiff agreed to give $2,500 in cash for an extension until November 5, 1902; that is, the sum of $2,500 which was to be applied as a part payment of the money consideration under the first agreement, was to belong to the defendants under the second agreement, and was not to be accounted for by them as a part of the cash payment. For this extension of time the plaintiff further agreed to put in the hands of the defendants two thousand shares of the stock of the company, which was to be in part payment if the contract was carried out, but was to be forfeited to the corporation in case the plaintiff was not " able duly to deliver the consideration and perform the agreement set forth in said agreement of August 27th on said November 5, 1902." We hardly see how parties could have expressed more plainly their intention and agreement that time should be of the essence of the contract. The plaintiff is not entitled to have specific performance of the contract, since the failure to perform it at the time appointed was due entirely to his own default. *Barnard* v. *Lee*, 97 Mass. 92, 94, and cases cited.

The plaintiff contends that he should recover from the defendants the money and stock, or a part of it, which he deposited under the contract, on the ground that the deposit was made as a provision for security, and not as liquidated damages. The question here is, What was the intention and meaning of the parties. If the fair interpretation of their agreement is that the money and stock should become the property of the defendant corporation as liquidated damages if the plaintiff failed to perform his contract, the plaintiff can have no relief in equity, but the contract will be held binding.

Much of what we have said on the other part of the case is

equally applicable to this also. In the first agreement it is said that, in the event of non-performance by the plaintiff, not only shall the deposit money be absolutely forfeited to the first party, but that the " trust company shall pay over the same to the first party and this agreement and all rights thereunder of the second party shall cease." The second agreement treats this money as having become the absolute property of the defendant corporation by reason of the plaintiff's failure to perform. This is the interpretation put upon the original agreement by the plaintiff as well as the defendants. The language of the second agreement, as to the stock, is equally clear. In case of default by the plaintiff the " shares shall be regarded as forfeited absolutely to said Pennsylvania Furnace Company acting by its committee free and clear from all demand or equity of said Garcin or any person whatsoever." This shows that in such a case the plaintiff was not to have any equitable right in the property. There is no averment in the bill to show that such a contract would be unconscionable, or even improbable. The actual value of the stock is not stated, although its par value is $100 per share.

We discover nothing in either of the agreements, or in any of the averments of the bill, to justify us in treating the money and stock as held merely for the security of the corporation, and we think it plain that the parties intended them to be retained as liquidated damages. *Guerin* v. *Stacy*, 175 Mass. 595. *Garst* v. *Harris*, 177 Mass. 72, 74. *Keefe* v. *Fairfield*, 184 Mass. 334.

*Demurrer sustained ; bill dismissed.*