HENRY N. SAWYER *vs.* GEORGE M. COOK & another.
GEORGE M. COOK & another *vs.* HENRY N. SAWYER.

Suffolk. March 30, 1905. — May 18, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Trust*, Creation. *Equity Jurisdiction*, Laches, To remove cloud on title.

Where one of three owners in common of a tract of land, bought to be cut into lots to be put upon the market, conveys his share in fee to the other two for convenience in managing the property and making conveyances, the parties making an agreement in writing by which all three are to use their best skill and exertions in making sales of the land and the one conveying his title is to receive from those holding the title a certain proportion of the proceeds from sales after the payment of all indebtedness and expenses, an express trust is created although the word "trust" is not used.

Where three persons have bought land in common for the purpose of cutting it into lots and putting it upon the market, and, for convenience in managing the property and making conveyances, one of the owners in common conveys his share in fee to the other two, retaining an equitable interest under an agreement in writing by which all three agree to "make use of their best skill and exertions to make sale of said real estate", if after the lapse of a year the one who has conveyed his share, instead of contributing his services to the development of the undertaking, voluntarily ceases to participate in it and makes an assignment of his interest through a third person to his wife, goes into bankruptcy, and shortly thereafter removes from the Commonwealth and for twenty-nine

years fails to make any exertions, or interest himself in any manner in making sales of the land, he has lost his equitable rights by laches, so that after this lapse of time his assignee cannot enforce the original trust created by the agreement in writing or compel an accounting by the assignor's former associates to whom he conveyed his share in the land.

A bill in equity may be maintained to remove a cloud from the title to land consisting of an equitable interest appearing of record which the holder has lost the right to enforce by reason of laches.

TWO BILLS IN EQUITY, filed respectively on November 20, 1903, and February 14, 1905, the first by Henry N. Sawyer against George M. Cook of Chicago and Mary A. Cook his wife, to remove a cloud from the plaintiff's title to certain land on Pleasant Street and Hancock Street in that part of Boston called Dorchester, and the second by the defendants in the first case against the plaintiff in the first case to enforce an alleged trust in the same land, and for an accounting.

The defendants in the first case demurred, and the defendant in the second case also demurred. In the Superior Court the cases came on to be heard together upon the bills and demurrers before *Fessenden*, J., who reserved them for determination by this court. In each case if the demurrer was sustained, without allowing amendment, the bill was to be dismissed; otherwise, such order was to be made as justice and equity might require.

*P. G. Bolster*, for George M. and Mary A. Cook.

*W. D. Turner*, for Sawyer.

BRALEY, J. Under the deed by which title was acquired originally to the land referred to in these bills of complaint Nathan Sawyer since deceased, his son Henry N. Sawyer, and George M. Cook, parties to the present suits, became seised as tenants in common of a large tract of unimproved real estate. The purchase price was $65,000, and of this amount $38,000 was secured by a mortgage back to the grantor, while the remaining $27,000 was paid in money, advanced by father and son, with the exception that of this sum $5,000 was the avails of a promissory note made by all the grantees, which has since been paid by the first two.

Within a short time after their acquisition of title, at the request of the other grantees, Cook conveyed to them his interest. A week later all the parties mutually sealed, executed, acknowledged and delivered the written agreement which is the

foundation of each of these suits.    Their legal relations and corresponding rights are to be determined under this deed, with the accompanying agreement, as obviously they are parts of and form one transaction.

It evidently was the common purpose to divide this tract into lots, put them upon the market, and by their joint efforts, not only to realize from sales the original cost, but also to make a profit by the venture.    For convenience in making conveyances, it is expressly stated that the fee is conveyed by Cook to them. They also are permitted to first repay themselves from the money received from sales for all advances made at the time of purchase, and further are authorized also to pay therefrom the outstanding mortgage and the unsecured note.    By this arrangement a less cumbersome method in disposing of the lots, and at the same time providing security for payments of advancements and money borrowed, was perfected.    After the full indebtedness had been paid they all were to share in the money received from the remaining lots as sold, in the proportion, however, of one fourth to Cook and three fourths to the Sawyers.

The plaintiff, Sawyer, who has acquired the title of his father, and now is seised in fee and in possession of the land remaining unsold, contends that this agreement is to be treated as a simple contract and nothing more, under which Cook did not gain any equitable interest in the real estate.

But, while the latter conveyed the fee, it was only for the accomplishment of the objects recited in the agreement.

No particular form of words is required to create a trust. But whether one exists or not is to be ascertained from the intention of the parties.    *Carpenter* v. *Cushman*, 105 Mass. 417, 419.    *Brown* v. *Combs*, 5 Dutch. 36, 39.

Plainly, Cook did not intend to surrender the advantage coming to him under the bargain, though willing that his associates for their own security and convenience should have the sole legal title, while it was understood between them that the instrument should not be placed on record.    Even if the ratio of division was changed from what it would have been under the first deed, the less amount coming to him well may have been decided upon in view of the financial burden assumed by them to which he had not proportionately contributed.    They engaged and became

bound to deal with the property not only for their own benefit but for his. In doing so they were under an obligation to proceed diligently, to act in good faith in its management, to account for all sales, and to pay over his share of the common fund, which upon sales being made took the place of the land. Although not nominally so designated they thus became trustees under an express trust. *Baylies* v. *Payson*, 5 Allen, 473, 488. *Urann* v. *Coates*, 109 Mass. 581. *Brown* v. *Cowell*, 116 Mass. 461. *Dorr* v. *Clapp*, 160 Mass. 538.

We proceed then to inquire whether Cook, or his assignee, can maintain their bill for an accounting.

The parties contemplated, and it is expressly stipulated, that all are to " make use of their best skill and exertions to make sale of said real estate." There was a joint enterprise to the successful promotion of which each was to contribute his time and services. No permission is given, nor is any implied, that either party without the assent of the other should assign his interest, and while freeing himself from a personal performance of his part of the obligation insist upon its satisfaction by the other.

All clearly were bound to participate in the joint undertaking, and to contribute their individual efforts for its success. *Griggs* v. *Moors*, 168 Mass. 354, 361.

If Mary A. Cook, as the assignee of her husband, in equity can bring suit in her own name on the cause of action assigned, her right of recovery is commensurate with whatever equitable claim he may have. When this is ascertained her rights also are defined. *Pike* v. *Waltham*, 168 Mass. 581. *Chapin* v. *Pike*, 184 Mass. 184. *Grigg* v. *Landis*, 6 C. E. Green, 494, 514.

In order to make the enterprise commercially profitable it was contemplated that the lots should at once be put upon the market, and sales continuously made, until all were sold. The element of time thus became material, and before any final accounting could be asked for by Cook he must have performed his covenant. *Garcin* v. *Pennsylvania Furnace Co.* 186 Mass. 405. *Dunklee* v. *Adams*, 20 Vt. 415.

Instead of contributing his services to the development of what had been undertaken, after little more than a year had elapsed, by his demurrer he admits that voluntarily he ceased to

participate, made an assignment of his interest through a third party to his wife, then went into bankruptcy, and shortly thereafter removed from the State. And under the allegations of his own bill from 1876, when he severed his connection with the enterprise, to 1905, when he brought this suit, or for a period of twenty-nine years, he failed to make any exertions, use his skill, or interest himself in any manner in making sales.

But one conclusion justly can be reached, which is that he deliberately failed to perform the reciprocal duties imposed upon him, and intentionally abandoned the undertaking.

It is argued that if the rendition of services by Cook is treated as a condition precedent to any right to an accounting by him of all that has been done under the trust up to the time of his suit, such construction is equivalent to a forfeiture of his equitable interest. The result thus reached would be the same as if the stipulation were considered a condition subsequent where equity affords relief from a forfeiture, but does not lend assistance to enforce it. *Horsburg* v. *Baker*, 1 Pet. 232, 236.

But while the principle invoked is well settled, and should be applied in a proper case to prevent injustice, in the discretionary power of a court of equity it should not be used to the manifest wrong of those against whom its application is sought. *Mactier* v. *Osborn*, 146 Mass. 399, 402. *Henry* v. *Tupper*, 29 Vt. 358.

Performance of the agreement as originally contemplated was made impossible by the act of Cook. He deliberately put the whole burden upon his associates, with any attendant inconvenience and loss to them which might arise from his failure of co-operation. They are not in default, and to allow him to treat his failure to perform as conferring a vested right, that gives to him the same measure of recovery as if he had fully performed, is but another way of saying that he can take advantage of his own wrong to their detriment.

While they were justified in view of his bankruptcy and subsequent conduct in taking the position that he had relinquished all claim upon them, and that they held the absolute title free from his equitable interest, it does not appear from the allegations of the first bill that by any overt act they made this position known to him.

And it is strongly urged that as the statute of limitations does

not run in favor of a trustee under an express trust until by some positive act he has repudiated the trust, and claims to hold adversely, with notice, to the *cestuis que trust*, the mere lapse of time that here appears is not sufficient to bar his right to demand an accounting. *Currier* v. *Studley*, 159 Mass. 17. *Potter* v. *Kimball*, 186 Mass. 120.

But it was said by Gray, J. in *Speidil* v. *Henrici*, 120 U. S. 377, " Independently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights, and shows no excuse for his laches in asserting them. ' A court of equity,' said Lord Camden, ' has always refused its aid to stale demands, where the party slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity, but conscience, good faith and reasonable diligence; where these are wanting, the court is passive, and does nothing. Laches and neglect are also discountenanced, and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court.' *Smith* v. *Clay*, 3 Bro. Ch. 640, note. . . . When the bill shows upon its face that the plaintiff, by reason of lapse of time and of his own laches, is not entitled to relief, the objection may be taken by demurrer." See also *Codman* v. *Rogers*, 10 Pick. 111, 119; *Snow* v. *Boston Blank Book Manuf. Co.* 153 Mass. 456, 458; *Tetrault* v. *Fournier*, 187 Mass. 58; *Sullivan* v. *Portland & Kennebec Railroad*, 94 U. S. 806, 812; *Hammond* v. *Hopkins*, 143 U. S. 224.

The analogy of the statute of limitations therefore is not decisive. By his failure to act when if at all he was entitled to relief, and after he had acquiesced in a delay of more than a quarter of a century before bringing his bill, he will not be permitted by a court of equity thus to speculate upon the possible chance of sharing in profits due to the efforts of others under a mutual arrangement which he purposely has repudiated. *McClellan* v. *Coffin*, 93 Ind. 456, 459.

The further suggestion is made that at least his bill can be maintained for an accounting during the time when he acted.

Without considering how far the assignment in bankruptcy deprived him of any right in the land, or money derived from its sale, the radical change in the carrying out of the original plan

that was caused by his abandonment, when coupled with the exceptional delay in the assertion of the claim which he now puts forward, and in the absence of any explanatory allegations appearing in his bill, make it inequitable to grant any measure of relief.

If he seeks equity he must be free from unconscionable conduct on his own part. Under the circumstances to which we have fully adverted, and in the absence of accident, fraud, or mistake, which do not appear, he has placed himself well within the prohibition of this salutary principle. *Hancock* v. *Carlton*, 6 Gray, 39, 52. *Blake* v. *Traders' National Bank*, 145 Mass. 13, 17. *Mactier* v. *Osborn, ubi supra. Lundin* v. *Schoeffel*, 167 Mass. 465.

The plaintiff Sawyer having brought suit within the time when if not in possession he could have maintained a writ of entry, counting upon the act of Cook in recording the agreement in 1890 as a disseisin, the remaining question is whether he can maintain his bill for its cancellation.

By recording the agreement Cook asserted at the time of its record an outstanding claim of an equitable interest which, in the light of the facts now shown, he could not enforce.

Its record as to strangers, however, would have shown a trust that by force of our laws relating to the recording of deeds would have charged purchasers of the lots with constructive notice, and they might have been held answerable for the application of the purchase price. *White* v. *Foster*, 102 Mass. 375. Being a part of the transaction under which title was acquired, its record at that time would not have created a cloud thereon, nor did it become such by being placed on record nearly twenty years thereafter in the absence of extrinsic evidence to show that the rights of the parties had changed.

Although this instrument for the reasons previously stated had ceased to be effective, yet when read in connection with the recorded deed to which it refers, there would be shown on the face of the whole record an outstanding equitable estate held by Cook or his assignee. *Harper* v. *Tidholm*, 155 Ill. 370, 376.

That an apparent incumbrance of this character might operate to diminish the market value of the land and deprive the complainant of possible purchasers is clear.

It also is plain that the true state of the title only could be made manifest by resort to parol evidence on his part, and with increasing lapse of time such evidence gradually becomes unavailable, and finally is lost. Where such conditions appear a bill can be maintained for the cancellation of a void instrument which clouds the title of the real owner of the land. *Martin* v. *Graves*, 5 Allen, 601, 602. *Sullivan* v. *Finnegan*, 101 Mass. 447. *Loring* v. *Whitney*, 167 Mass. 550, 552. *Loring* v. *Hildreth*, 170 Mass. 328. And this relief may be granted even if a technical forfeiture of the estate which constitutes the incumbrance follows, where it appears that all rights under it have been lost by the wilful and prolonged neglect of the party who otherwise might have preserved and enforced his title. *McClellan* v. *Coffin, ubi supra*.

. It follows under the terms of the reservation that in the first case the plaintiff is entitled to a decree for the cancellation of the agreement, and in the second case the bill is to be dismissed.

*Decrees accordingly*.